**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LUMINATI NETWORKS LTD. | |
| Plaintiff, | |
| v. | Case No. |
| UAB TESONET, | JURY TRIAL DEMANDED |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, Luminati Networks Ltd. ("Luminati") brings this action under the patent laws of the United States, Title 35 of the United States Code, and makes the following allegations against UAB Tesonet ("Tesonet" or "Defendant"):

**THE PARTIES**

1.      Plaintiff Luminati is an Israeli company having a principal place of business at 3 Hamahshev St., Netanya 42507, ISRAEL.

2.      Upon information and belief, Defendant Tesonet is a Lithuanian corporation headquartered at Jasinskio Street 16, Vilnius, 03163 Lithuania.  Tesonet may be served pursuant to the provisions of the Hague Service Convention.

**JURISDICTION AND VENUE**

3.      This is an action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq*.

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Tesonet because it, directly or through its subsidiaries, divisions, groups, or distributors, has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2).   On information and belief, Tesonet transacts substantial business in the State of Texas, directly or through agents, including: (i) at least a portion of the infringement alleged herein, and (ii) regularly does or solicits business in Texas, engages in other persistent courses of conduct, maintains continuous and systematic contacts within this Judicial District, purposefully avails itself of the privilege of doing business in Texas, and/or derives substantial revenue from services provided in Texas.   For example, on information and belief, Tesonet embeds its software, which is the subject of the infringement alleged herein, in a number of applications which are placed into the stream of commerce with the knowledge, understanding, and/or intention that they be downloaded and executed by individuals located in the State of Texas, as well as this Judicial District, including the Marshall Division.

6.      This Court has general jurisdiction over Tesonet due to its continuous and systematic contacts with the State of Texas and this jurisdiction.   Further, Tesonet is subject to this Court's jurisdiction because it has committed patent infringement in the State of Texas and this jurisdiction.

7.      Following *Brunette Machine Works v. Kockum Industries, Inc.*, 406 U.S. 706 1972), venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because, upon information and belief, Tesonet is a foreign entity.

## FACTUAL ALLEGATIONS

8.      Derry Shribman and Ofer Vilenski are the sole inventors of a number of patents, including U.S. Patent Nos. 9,241,044 (Exhibit A, "'044 Patent") and divisional 9,742,866 (Exhibit B, "'866 Patent") (collectively the "Asserted Patents").

9.      The Asserted Patents are directed toward methods for fetching content over the internet through the use of intermediary tunneling devices. Luminati identifies its patents on its website at https://luminati.io/patent-marking#system-and-method-for-streaming-content-from-multiple-servers.

10.     The Asserted Patents were assigned to Hola Networks Ltd. ("Hola"). Hola has subsequently changed its name to Luminati Ltd., before changing its name to Luminati Networks Ltd., the Plaintiff in this action.

11.     Luminati, formerly known as Hola, provides a cloud service connecting tens of millions of devices over the Internet through a proxy-based network.  Each participating device allows the network to utilize a small fraction of that device's idle time for the network.  Luminati utilizes this network to provide proxy-based services to businesses.

12.     Since 2014, Luminati has offered proxy-based services relying on its "Residential Proxy Network" that practice one or more claims of the Asserted Patents.  Luminati permits its business customers to utilize its residential proxy network to gather data over the Internet using residential IP addresses from various localities as required by the customers.  These residential IP addresses provide businesses with a number of advantages.  For example, online retailers may use these addresses to gather comparative pricing information from its competitors, businesses may utilize these addresses to test their web sites from any city in the world, and cyber security firms may employ these addresses to test web sites for malicious code.

13.     Prior to and separate from the technology at issue in this case, Hola provided a virtual private network ("VPN") service called HolaVPN.  Between November 2015 and June 2018, Hola, had a business relationship with Tesonet related to HolaVPN and Tesonet's VPN service called NordVPN.

14.     On May 22, 2017, during a meeting between Hola Chief Executive Officer Ofer Vilenski and Tesonet co-founder Tomas Okmanas, Mr. Okmanas informed Mr. Vilenski that Tesonet was thinking about entering into the residential proxy business.  Mr. Vilenski informed Mr. Okmanas that Luminati has patents in this field and sent an email to Mr. Okmanas that same day confirming that Luminati would send a letter identifying Luminati's intellectual property in this field.

15.     On June 1, 2017, outside counsel for Hola sent Mr. Okmanas a letter (Exhibit C) identifying the '044 Patent and U.S. Patent No. 8,560,604 as Hola patents covering a proprietary claim scope in the field of peer-to-peer based routing.

16.     On February 14, 2018, Luminati sent a second letter to Mr. Oksmanas referencing the June 1, 2017 letter, further informing Tesonet of Hola's name change to Luminati and the issuance of the '866 Patent among other patents in the field of IP VPN services using peer-to-peer technology (Exhibit D).  This letter also notified Tesonet that products and services offered under Tesonet's "OxyLabs" brand infringe the Asserted Patents.

17.     On June 20, 2018, counsel for Tesonet sent a letter to Luminati's counsel acknowledging receipt of the February 14, 2018 letter but denying that Tesonet's Oxylabs product practices claims of the Asserted Patents.

18.     Upon information and belief, Tesonet offers large-scale web data extraction products and services under the OxyLabs brand.  https://oxylabs.io/ (Exhibit E). Upon

information and belief, this includes a residential proxy network with ten million residential IP

addresses from more than 180 countries.  https://oxylabs.io/.  Upon information and belief, these

residential proxies are IP addresses that are assigned from a standard Internet Service Provider

(ISP) to a homeowner or other residential or mobile user.  https://oxylabs.io/.  Upon information

and belief, this residential proxy network is used to access content over the Internet, wherein that

content may be divided into portions, each of which includes part of the content and its own

content identifier.

## WHAT SOLUTIONS DO YOU OFFER?

Here at Oxylabs, we offer data center IPs and residential proxies that support HTTP/HTTPS & Socks
4/5 protocols.

- A Residential Proxy is an IP address that is assigned from a standard Internet Service Provider
  (ISP) to a homeowner.
- A Data Center IP is an IP address that comes from a secondary corporation and is not owned
  by an ISP.

https://oxylabs.io/.

# How does it work

Route your requests through millions of residential IPs and never get blocked.



[https://oxylabs.io/proxies/residential-proxies.](https://oxylabs.io/proxies/residential-proxies) (Exhibit F)

## Residential Proxy Network

WHY SHOULD I USE A RESIDENTIAL PROXY NETWORK?

Residential proxies enable data collection without IP bans and ensure a high anonymity level. These IPs mostly belong to large internet and mobile service providers. that's why other websites don't block users with these kinds of IPs.

HOW OFTEN ARE RESIDENTIAL PROXIES CHECKED FOR BEING UP?

All of our residential proxies are being checked every 60 seconds.

CAN I SELECT A PROXY FROM SPECIFIC COUNTRY OR CITY?

Yes, you can specify in the authorization header which city IP to use to process the request.

https://oxylabs.io/faq. Upon information and belief, these residential proxies include IP addresses located in Marshall, Texas.

19.     Upon information and belief, the OxyLabs residential proxy network is based upon numerous user devices, each of which is a client device identifiable over the Internet by an IP address.  Upon information and belief, these user devices become part of the network through the execution of Tesonet code embedded in applications downloaded by that devices user.  Upon information and belief, these devices send their identifier to a server ("First Server"), such as Oxylab's dedicated proxy servers, which store these identifiers.

20.     Upon information and belief, Tesonet has developed or is developing OxyLabs embedded software for different platforms including Google Android and Windows. Upon information and belief, while frequently renamed, the above OxyLabs embedded software that enables the residential proxy network includes embedded code named "genericexitnode," "winnerbot," "CoffeeService," "instantcoffee," and "ENService."

21.     Upon information and belief, the above OxyLabs embedded code has been integrated in at least the following software applications that may be downloaded by any user located anywhere having Internet access: AppAspect Technologies' "EMI Calculator" and "Automatic Call Recorder"; Birrastorming Ideas, S.L's "IPTV Manager for VL;" CC Soft's "Followers Tool for Instagram;" Glidesoft Technologies' "Route Finder;" ImaTechInnovations' "3D Wallpaper Parallax 2018;" and    Softmate a/k/a Toolbarstudio Inc.'s "AppGeyser" and "Toolbarstudio."

22.     Upon information and belief, an OxyLabs customer may utilize the OxyLabs residential proxy network by sending a request ("First Request") from the customer's device ("First Device") to the above First Server, which responds by sending the IP address ("Second

Identifier") corresponding to one of a group of client devices in the proxy network, any one of which may serve as a proxy device ("Second Device") back to the First Device.

23.     Upon information and belief, having received the Second Identifier, the First Device may then send a request ("Second Request") to the Second Device for specific Internet data ("First Content") identified by an identifier ("Content Identifier") from a target server ("Second Server") identified by its own identifier ("Third Identifier"), which is forwarded by the Second Device to the Second Server.  Upon information and belief, the target Second Server responds to the forwarded Second Request by sending the First Content to the Second Device, which is then forwarded back to the Oxylabs customer at the First Device.  Upon information and belief, to the extent that the requested content is divided into portions or slices, the First Device can construct the content from the plurality of Content Slices.

24.     The use of the residential proxy network permits anonymity to Oxylabs customers, such as for engaging in activities like as web crawling, without disclosing its identify to the targeted web sites.

**COUNT I**
(Infringement of the '044 Patent)

25.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-24 of this Complaint as if fully set forth herein.

26.     The '044 Patent entitled "System and Method for Improving Internet Communication by Using Intermediate Nodes" was duly and legally issued by the U.S. Patent and Trademark Office on June 19, 2016 from Application No. 14/468,836 filed on August 26, 2014, claiming priority to provisional applications 61/870,815 filed on August 28, 2013. A true and accurate copy of the '044 Patent is attached hereto as Exhibit A.

27.     Each and every claim of the '044 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

28.     Luminati exclusively owns all rights, title, and interest in and to the '044 Patent and possesses the exclusive right of recovery, including the exclusive right to recover for past infringement.

29.     Claim 81 of the '044 Patent recites:

Claim 81. A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of:
(a) sending the first identifier to the first server;
(b) sending a first request to the first server;
(c) receiving the second identifier from the first server;
(d) sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier; and
(e) receiving the first content from the second device.

30.     As described above in paragraphs 18-19, upon information and belief, Tesonet's OxyLabs proxy residential network comprises numerous devices each of which is identifiable by its own IP address ("identifier"), which are stored on Tesonet's servers.  Consequently, Tesonet's OxyLabs proxy residential network would comprise at least a First Device and Second Device with their corresponding First Identifier and Second Identifier and a First Server.

31.     As described above in paragraphs 18-23, upon information and belief, this network would permit a user to access Internet content ("First Content"), identifiable by a content identifier such as a URL ("First Content Identifier") from a target server ("Second Server"), identifiable by its own corresponding IP address ("Third Identifier").

32.     As described above in paragraphs 18-23, upon information and belief, the user devices of the OxyLabs proxy residential network, any one of which could be a "First Device"

sends its corresponding IP address ("First Identifier") to the OxyLabs server or "First Server," which stores these identifiers.

33.     As described above in paragraphs 18-23, upon information and belief, an OxyLabs customer can utilize their device, which would be the First Device, to send a request ("First Request") to the First Server, causing the First Server to respond by sending the Second Identifier back to the First Device. Upon information and belief, the OxyLabs customer can then send a second request ("Second Request"), comprising a First Content Identifier and a Third Identifier to the Second Device, which forwards the First Content Identifier to the Second Server. Upon information and belief, the Second Server responds by sending the requested First Content to the Second Device, which is forwarded back to the First Device.

34.     Tesonet has had actual notice of the '044 Patent since at least June 1, 2017, and has known, including by way of communications on and since June 1, 2017 and this lawsuit, that implementation of its OxyLabs residential proxy service would infringe at least claim 81 of the '044 Patent.

35.     Tesonet has been and is now directly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 81 of the '044 Patent, by implementing its residential proxy service in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(a).

36.     Tesonet has been and is now indirectly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 81 of the '044 Patent, by providing this residential proxy service to its customers knowing that the use of such service infringes these claims in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(b).

37.     As a result of Tesonet's infringement of the '044 Patent, Luminati has suffered and continues to suffer damages.  Thus, Luminati is entitled to recover from Tesonet the damages Luminati sustained as a result of Tesonet's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court under 35 U.S.C. § 284.

38.     Luminati has suffered damage because of the infringing activities of Tesonet, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless Tesonet's infringing activities are preliminarily and permanently enjoined by this Court.

39.     Tesonet's infringement of the '044 Patent was, is, and continues to be deliberate and willful because Tesonet was and is on notice of the '044 Patent at least as early as June 1, 2017, yet it continued and continues to infringe the '044 Patent.

## COUNT II
### (Infringement of the '866 Patent)

40.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-39 of this Complaint as if fully set forth herein.

41.     The '866 Patent entitled "System and Method for Improving Internet Communication by Using Intermediate Nodes" was duly and legally issued by the U.S. Patent and Trademark Office on August 22, 2017 from Application No. 14/930,894 filed on August 22, 2017, a divisional of Application No. 14/468,836 that issued as the '044 Patent, both of which claim priority to provisional applications 61/870,815 filed on August 28, 2013. A true and accurate copy of the '866 Patent is attached hereto as Exhibit B.

42.     Each and every claim of the '866 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

43.     Luminati exclusively owns all rights, title, and interest in and to the '866 Patent and possesses the exclusive right of recovery, including the exclusive right to recover for past infringement.

44.     Claim 15 of the '866 Patent recites:

Claim 15. A method for fetching a content over the Internet from a first server identified in the Internet by a second identifier via a group of multiple devices, each identified in the Internet by an associated group device identifier, the method comprising the step of partitioning the content into a plurality of content slices, each content slice containing at least part of the content, and identified using a content slice identifier, and for each of the content slices, comprising the steps of:
(a) selecting a device from the group;
(b) sending over the Internet a first request to the selected device using the group device identifier of the selected device, the first request including the content slice identifier and the second identifier;
(c) in response to receiving the sent first request by the selected device, receiving over the Internet the content slice from the selected device; and wherein the method further comprising the step of constructing the content from the received plurality of content slices, and
wherein each of the devices in the group is a client device.

45.     As described above in paragraphs 18-19, upon information and belief, Tesonet's OxyLabs proxy residential network comprises numerous devices, each of which is a client device identifiable by its own identifier.   Tesonet's OxyLabs proxy residential network permits Tesonet's customers to request content from the customer's device ("First Device") identifiable by its own IP address ("First Identifier") via a proxy device ("Second Device"), selected from a group of client devices ("Group") each of which has its own IP address ("Group Device Identifier"), from a target server ("First Server") identifiable by its own IP address ("Second Identifier").   As further described above, this content may be divided into portions ("Content Slices") identifiable by their own identifiers ("Content Slice Identifier").

46.     As described above in paragraphs 18-23, upon information and belief, this network would permit the First Device to select a Second Device from the Group and send a request ("First Request") over the internet to the Second Device using the selected second device IP address ("Second Device Identifier").  This First Request includes the Content Slice Identifier and Second Identifier.

47.     As described above in paragraphs 18-23, upon information and belief, the above Second Device responds to the First Request by sending a second request ("Second Request") to the First Server with the Content Slice Identifier.  The First Server responds by sending the requested Content Slice to the Second Device, which forwards the Content Slice back to the receiving First Device.  The First Device then constructs the content from the plurality of Content Slices.

48.     Tesonet has had actual notice of the '866 Patent since at least February 14, 2018, and has known, including by way of communications on and since February 14, 2018 and this lawsuit, that implementation of its OxyLabs residential proxy service would infringe at least claim 15 of the '866 Patent.

49.     Tesonet has been and is now directly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '866 Patent, by implementing its residential proxy service in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(a).

50.     Tesonet has been and is now indirectly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '866 Patent, by providing this residential proxy service to its customers knowing that the use of such service

infringes these claims in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(b).

51.     As a result of Tesonet's infringement of the '866 Patent, Luminati has suffered and continues to suffer damages. Thus, Luminati is entitled to recover from Tesonet the damages Luminati sustained as a result of Tesonet's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court under 35 U.S.C. § 284.

52.     Luminati has suffered damage because of the infringing activities of Tesonet, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless Tesonet's infringing activities are preliminarily and permanently enjoined by this Court.

53.     Tesonet's infringement of the '866 Patent was, is, and continues to be deliberate and willful because Tesonet was and is on notice of the '866 Patent at least as early as February 14, 2018, yet it continued and continues to infringe the '866 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff May Patents respectfully requests that this Court enter:

A.  A judgment that each of the Asserted Patents is valid and enforceable.

B.  A judgment in favor of Luminati that the Defendant has and is infringing the Asserted Patents;

C.  A judgment declaring Defendant's infringement to be willful.

D.  A judgment declaring that this case is exceptional within the meaning of 35 U.S.C. § 285;

E.  A permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, associates, partners, and other persons who are in active concert or participation with Tesonet, from infringing the Asserted Patents and/or such other equitable relief the Court determines is warranted in this case;

F.  A judgment and order requiring the Defendant to pay to Luminati its damages, enhanced damages, costs, expenses, prejudgment and post-judgment interest, and attorneys' fees, if applicable, for the Defendants' infringement of the Asserted Patents as provided under 35 U.S.C. §284 and/or §285, and an accounting of ongoing post-judgment infringement; and

G.  Any and all other relief, at law or in equity that this Court deems just or proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Luminati hereby demands a trial by jury of all issues so triable.

Dated:  July 19, 2018

By: */s/ Korula T. Cherian*

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Korula T. Cherian
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702
Email: sunnyc@ruyakcherian.com

Attorneys for Plaintiff