**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LUMINATI NETWORKS LTD. | |
| Plaintiff, | Case No. 2:18-cv-00299-JRG |
| v. | |
| UAB TESONET, | District Judge:  J. Rodney Gilstrap |
| Defendant. | |

**DEFENDANT UAB TESO LT'S ANSWER, AFFIRMATIVE DEFENSES AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant UAB Teso LT (formerly known as UAB Tesonet) ("Teso LT" or "Defendant") by and through undersigned counsel, answers the Amended Complaint for Patent Infringement ("Complaint") of Plaintiff Luminati Networks Ltd. ("Luminati" or "Plaintiff"), filed with the Court on December 12, 2018, as follows:

## I.  ANSWER

### THE PARTIES

1.      Plaintiff Luminati is an Israeli company having a principal place of business at 3 Hamahshev St., Netanya 42507, ISRAEL.

**ANSWER**: Teso LT admits, on information and belief, that Plaintiff Luminati is a company organized and existing under the laws of Israel, with a principal place of business at 3 Hamahshev St., Netanya 42507, ISRAEL. Upon information and belief, EMK Capital LLP, a company organized and existing under the laws of the United Kingdom and having a principal place of business at Lex House 2nd Floor, 17 Connaught Place, London, United Kingdom W2

2ES, owns a majority stake in Luminati. Upon information and belief, IPPN Ltd., a company organized and existing under the laws of Ireland and having a principal place of business at Glounthaune, T45 D544 Co. Cork, Ireland, owns at least 10% of Luminati. Based upon publicly available information regarding EMK Capital's relationship with Luminati, Teso LT objects to Plaintiff's Rule 7.1 Corporate Disclosure as deficient. Teso LT further reserves the right to seek discovery related to these parties and/or add one or both of these companies as a necessary party to the present litigation.

2.      Upon information and belief, Defendant Tesonet, purportedly now known as UAB Teso LT as stated by Defendant in its Answer, is a Lithuanian corporation that was headquartered at Jasinskio Street 16, Vilnius, 03163 Lithuania as of the filing of the original complaint and is purportedly currently located at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania. Tesonet may be served pursuant to the provisions of the Hague Service Convention.

**ANSWER**: Teso LT admits that UAB Tesonet was a corporation organized and existing under the laws of Lithuania under Registration Code 302166536, having a principal place of business at J. Jasinskio g. 16C, Vilnius 03163, Lithuania. On September 14, 2018, UAB Tesonet's name was changed to UAB Teso LT, a corporation organized and existing under the laws of Lithuania under the same Registration Code 302166536, having a principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania. Registration of UAB Teso LT (formerly known as UAB Tesonet) is attached hereto as Exhibit 1. Teso LT admits that it may be served pursuant to the provisions of the Hague Service Convention.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1, et seq.

**ANSWER**: Teso LT admits that plaintiff Luminati has filed an action for purported patent infringement. The remainder of paragraph 3 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT does not contest that plaintiff's action arises under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq*. Except as expressly admitted, Teso LT denies any remaining allegations in paragraph 3 of the Complaint.

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338, and 1367. Tesonet has not contested subject matter jurisdiction of the Court.

**ANSWER**: Paragraph 4 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT does not contest that this Court has jurisdiction over the subject matter of the Complaint, pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

5.      This Court has personal jurisdiction over Tesonet because it, directly or through its subsidiaries, divisions, groups, or distributors, has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2). On information and belief, Tesonet transacts substantial business in the State of Texas, directly or through agents, including: (i) at least a portion of the infringement alleged herein, and (ii) regularly does or solicits business in Texas, engages in other persistent courses of conduct, maintains continuous and systematic contacts within this Judicial District, purposefully avails itself of the privilege of doing business in Texas, and/or derives substantial revenue from services provided in Texas. For example, on information and belief, Tesonet embeds its software, which is the subject of the infringement alleged herein, in a number of applications which are placed into the stream of commerce with the knowledge, understanding, and/or

intention that they be downloaded and executed by individuals located in the State of Texas, as well as this Judicial District, including the Marshall Division. Tesonet has not contested personal jurisdiction of this Court and thereby acquiesced to personal jurisdiction by this Court.

**ANSWER**: Paragraph 5 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT does not contest personal jurisdiction of this Court over UAB Teso LT (formerly known as UAB Tesonet), solely for the purposes of this litigation, the subject matter of the Complaint, and the specific patents contained in the Complaint. Except as expressly admitted, Teso LT denies the remaining allegations in paragraph 5 of the Complaint.

6.      This Court has general jurisdiction over Tesonet due to its continuous and systematic contacts with the State of Texas and this jurisdiction. Further, Tesonet is subject to this Court's jurisdiction because it has committed patent infringement in the State of Texas and this jurisdiction.

**ANSWER**: Paragraph 6 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies that this Court has general jurisdiction over UAB Teso LT (formerly known as UAB Tesonet). Teso LT denies the remaining allegations in paragraph 6 of the Complaint.

7.      Following *Brunette Machine Works v. Kockum Industries, Inc.*, 406 U.S. 706 1972), venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because, upon information and belief, Tesonet is a foreign entity. Tesonet has not contested that venue is proper.

**ANSWER**: Teso LT admits that it is a foreign entity. The remainder of paragraph 7 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a

response is required, and solely for purposes of this litigation, the subject matter of the Complaint, and the specific patents contained in the Complaint, Teso LT does not contest that venue is proper.

## FACTUAL ALLEGATIONS

8.      Derry Shribman and Ofer Vilenski are the sole inventors of a number of patents, including U.S. Patent Nos. 9,241,044 (Exhibit A, "'044 Patent") and divisional 9,742,866 (Exhibit B, "'866 Patent") (collectively the "Asserted Patents").

**ANSWER**: Teso LT admits that the '044 Patent and the '866 Patent on their face identify the inventors as Derry Shribman and Ofer Vilenski. Teso LT admits that a copy of the '044 Patent is purportedly attached to the Complaint as Exhibit A, and that a copy of the '866 Patent is purportedly attached to the Complaint as Exhibit B. Teso LT is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8 of the Complaint, and therefore denies any such allegations.

9.      The Asserted Patents are directed toward methods for fetching content over the internet through the use of intermediary tunneling devices. Luminati identifies its patents on its website at   https://luminati.io/patent-marking#system-and-method-for-streaming-content-frommultiple-servers.

**ANSWER**: Teso LT admits that the Abstract of the Asserted Patents on its face states "[a] method for fetching a content from a web server to a client device is disclosed, using tunnel devices serving as intermediate devices." Regarding the remainder of paragraph 9, Teso LT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint, and therefore denies any such allegations.

10.     The Asserted Patents were assigned to Hola Networks Ltd. ("Hola"). Hola has subsequently changed its name to Luminati Ltd., before changing its name to Luminati Networks Ltd., the Plaintiff in this action.

**ANSWER**: Teso LT admits that the '044 Patent and the '866 Patent on their face identify the assignee as Hola Networks Ltd. Teso LT is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10 of the Complaint, and therefore denies any such allegations.

11.     Luminati, formerly known as Hola, provides a cloud service connecting tens of millions of devices over the Internet through a proxy-based network. Each participating device allows the network to utilize a small fraction of that device's idle time for the network. Luminati utilizes this network to provide proxy-based services to businesses.

**ANSWER**: Teso LT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint, and therefore denies any such allegations.

12.     Since 2014, Luminati has offered proxy-based services relying on its "Residential Proxy Network" that practice one or more claims of the Asserted Patents. Luminati permits its business customers to utilize its residential proxy network to gather data over the Internet using residential IP addresses from various localities as required by the customers. These residential IP addresses provide businesses with a number of advantages. For example, online retailers may use these addresses to gather comparative pricing information from its competitors, businesses may utilize these addresses to test their web sites from any city in the world, and cyber security firms may employ these addresses to test web sites for malicious code.

**ANSWER**: Teso LT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint, and therefore denies any such allegations.

13.     Prior to and separate from the technology at issue in this case, Hola provided a virtual private network ("VPN") service called HolaVPN. Between November 2015 and June 2018, Hola, had a business relationship with Tesonet related to HolaVPN and Tesonet's VPN service called NordVPN.

**ANSWER**: Teso LT admits that Luminati asserts that Hola provided a VPN service called HolaVPN prior to and separate from the technology at issue in this case. Teso LT admits that prior to and separate from the technology at issue in this case, Hola and Tesonet had a business relationship.

14.     On May 22, 2017, during a meeting between Hola Chief Executive Officer Ofer Vilenski and Tesonet co-founder Tomas Okmanas, Mr. Okmanas informed Mr. Vilenski that Tesonet was thinking about entering into the residential proxy business. Mr. Vilenski informed Mr. Okmanas that Luminati has patents in this field and sent an email to Mr. Okmanas that same day confirming that Luminati would send a letter identifying Luminati's intellectual property in this field.

**ANSWER**: Teso LT admits that a meeting between Ofer Vilenski and Tomas Okmanas occurred on May 22, 2017, and that the Mr. Vilenski and Mr. Okmanas discussed Teso LT considering entering the residential proxy business. Teso LT also admits that Mr. Vilenski informed Mr. Okmanas that Luminati has patents purportedly in this field and sent an email to Mr. Okmanas on May 22, 2017, confirming Luminati would send a letter identifying its intellectual property in

this field. Except as expressly admitted, Teso LT denies any remaining allegation in paragraph 14 of the Complaint.

15.     On June 1, 2017, outside counsel for Hola sent Mr. Okmanas a letter (Exhibit C) identifying the '044 Patent and U.S. Patent No. 8,560,604 as Hola patents covering a proprietary claim scope in the field of peer-to-peer based routing.

**ANSWER**: Teso LT admits that, on June 1, 2017, Mr. Okmanas received a letter from Ibrahim Hallaj, purporting to represent Hola Networks Ltd. Teso LT admits that the letter from Mr. Hallaj is attached as Exhibit C to the Complaint, and identifies the '044 patent and U.S. Patent No. 8,560,604 (not asserted in this litigation). Teso LT is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 15 of the Complaint, and therefore denies any such allegations.

16.     On February 14, 2018, Luminati sent a second letter to Mr. Okmanas referencing the June 1, 2017 letter, further informing Tesonet of Hola's name change to Luminati and the issuance of the '866 Patent among other patents in the field of IP VPN services using peer-to-peer technology (Exhibit D). This letter also notified Tesonet that products and services offered under Tesonet's "OxyLabs" brand infringe the Asserted Patents.

**ANSWER**: Teso LT admits that Mr. Okmanas received a letter from Mr. David Cohen, purporting to be outside counsel for Luminati, stating that Luminati Networks Ltd was formerly known as Hola Networks Ltd., and identifying both the '044 Patent and the '866 Patent as purportedly assigned to Luminati Networks Ltd. Teso LT admits that this letter is attached as Exhibit D to the Complaint. Except as expressly admitted, Teso LT denies any remaining allegations in paragraph 16 of the Complaint.

17.    On June 20, 2018, counsel for Tesonet sent a letter to Luminati's counsel acknowledging receipt of the February 14, 2018 letter but denying that Tesonet's Oxylabs product practices claims of the Asserted Patents.

**ANSWER**: Teso LT admits that on June 20, 2018, Teso LT, through its counsel, sent a responsive letter to Luminati's counsel denying that its Oxylabs product practices or otherwise infringes the claims of the Asserted Patents. Except as expressly admitted, Teso LT denies any remaining allegations in paragraph 17 of the Complaint.

18.    Upon information and belief, Tesonet offers large-scale web data extraction products and services under the OxyLabs brand. https://oxylabs.io/ (Exhibit E). Upon information and belief, this includes a residential proxy network with ten million residential IP addresses from more than 180 countries. https://oxylabs.io/. Upon information and belief, these residential proxies are IP addresses that are assigned from a standard Internet Service Provider (ISP) to a homeowner or other residential or mobile user. https://oxylabs.io/. Upon information and belief, this residential proxy network is used to access content over the Internet, wherein that content may be divided into portions, each of which includes part of the content and its own content identifier.

**WHAT SOLUTIONS DO YOU OFFER?**

Here at Oxylabs, we offer data center IPs and residential proxies that support HTTP/HTTPS & Socks 4/5 protocols.

- A Residential Proxy is an IP address that is assigned from a standard Internet Service Provider (ISP) to a homeowner.
- A Data Center IP is an IP address that comes from a secondary corporation and is not owned by an ISP.

https://oxylabs.io/.



https://oxylabs.io/proxies/residential-proxies. (Exhibit F)

## Residential Proxy Network

⊖   **WHY SHOULD I USE A RESIDENTIAL PROXY NETWORK?**

Residential proxies enable data collection without IP bans and ensure a high anonymity level. These IPs mostly belong to large internet and mobile service providers. that's why other websites don't block users with these kinds of IPs.

⊖   **HOW OFTEN ARE RESIDENTIAL PROXIES CHECKED FOR BEING UP?**

All of our residential proxies are being checked every 60 seconds.

⊖   **CAN I SELECT A PROXY FROM SPECIFIC COUNTRY OR CITY?**

Yes, you can specify in the authorization header which city IP to use to process the request.

https://oxylabs.io/faq. Upon information and belief, these residential proxies include IP addresses  located in Marshall, Texas.

**ANSWER**: Teso LT admits that portions of its website, https://oxylabs.io/, is attached as Exhibit E and Exhibit F. Teso LT is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 18 of the Complaint, and therefore denies any such allegations.

19.   Upon information and belief, the OxyLabs residential proxy network is based upon numerous user devices, each of which is a client device identifiable over the Internet by an IP address. Upon information and belief, these user devices become part of the network through the execution of Tesonet code embedded in applications downloaded by that devices user. Upon information and belief, these devices send their identifier to a server ("First Server"), such as Oxylab's dedicated proxy servers, which store these identifiers.

**ANSWER**: Teso LT denies the allegations in paragraph 19 of the Complaint.

20.   Upon information and belief, Tesonet has developed or is developing OxyLabs embedded software for different platforms including Google Android and Windows. Upon information and belief, while frequently renamed, the above OxyLabs embedded software that enables the residential proxy network includes embedded code named "genericexitnode," "winnerbot," "CoffeeService," "instantcoffee," and "ENService."

**ANSWER**: Teso LT admits that OxyLabs software enables the Teso LT's residential proxy network and includes embedded code named "genericexitnode," "CoffeeService," "instacoffee" and "ENService." Except as expressly admitted, Teso LT denies any remaining allegations in paragraph 20 of the Complaint.

21.     Upon information and belief, the above OxyLabs embedded code has been integrated and is believed to be currently embedded in at least the following software applications that may be downloaded by any user located anywhere having Internet access: AppAspect Technologies' "EMI Calculator" and "Automatic Call Recorder"; Birrastorming Ideas, S.L's "VL Video Player IPTV;" CC Soft's "Followers Tool for Instagram;" Glidesoft Technologies' "Route Finder;" ImaTechInnovations' "3D Wallpaper Parallax 2018;" and Softmate a/k/a Toolbarstudio Inc.'s "AppGeyser" and "Toolbarstudio"; Mobimento Mobile SI's "Mobincube"; Smart Media Internet Marketing Ltd.'s, also known as Mobbo, "TapVPN Free VPN"; Smartshark App's "Moments Cartoon Caricature," "Daily Horoscope Orion," "Star horoscope," "Daily horoscope," and "AliFeed"; Kafui Util's "Smart Kit 360"; Astrology and Horoscope Studio's "Cartoon Yourself," "Daily Horoscope," and "Horoscope Sirius," and Auslogic's "Auslogics Disk Defrag Free," "Auslogics Duplicate File Finder," Auslogics Registry Cleaner," "Auslogics Browser Care," "Auslogics Registry Defrag," and "Auslogics Windows Slimmer."

**ANSWER**: Teso LT admits that OxyLabs embedded code has been integrated in the software applications listed in paragraph 21, which may be downloaded by OxyLabs customers and/or users. Except as expressly admitted, Teso LT denies any remaining allegations in paragraph 21 of the Complaint.

22.     Upon information and belief, an OxyLabs customer may utilize the OxyLabs residential proxy network by sending a request ("First Request") from the customer's device ("First Device") to the above First Server, which responds by sending the IP address ("Second Identifier") corresponding to one of a group of client devices in the proxy network, any one of which may serve as a proxy device ("Second Device") back to the First Device.

**ANSWER**: Teso LT denies the allegations in paragraph 22 of the Complaint.

23.     Upon information and belief, having received the Second Identifier, the First Device may then send a request ("Second Request") to the Second Device for specific Internet data ("First Content") identified by an identifier ("Content Identifier") from a target server ("Second Server") identified by its own identifier ("Third Identifier"), which is forwarded by the Second Device to the Second Server. Upon information and belief, the target Second Server responds to the forwarded Second Request by sending the First Content to the Second Device, which is then forwarded back to the Oxylabs customer at the First Device. Upon information and belief, to the extent that the requested content is divided into portions or slices, the First Device can construct the content from the plurality of Content Slices.

**ANSWER**: Teso LT denies the allegations in paragraph 23 of the Complaint.

24.     The use of the residential proxy network permits anonymity to Oxylabs customers, such as for engaging in activities like as web crawling, without disclosing its identify to the targeted web sites.

**ANSWER**: Teso LT admits that the residential proxy network permits anonymity to Oxylabs customers. Teso LT is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 24 of the Complaint, and therefore denies any such allegations.

25.     Since the filing of the original complaint on July 12, 2018, Tesonet has posted information on its website under the title of "Bust the Bully: $100,000 for Prior Art" including allegations that Luminati (a) is "threatening companies for alleged patent infringement without any evidence," (b) "chooses to harass big and small companies alike" (c) "is also trying to disrupt its competitors' ability to compete on equal terms by sending

lawsuit threats to clients of the  competing companies," (d) "is using this unjustified business method to intimidate smaller market  players," (e) is "engaged in deceptive behavior," and (f) "has no patent rights outside of the United  States because their European applications for patents mentioned above have been withdrawn due  to lack of novelty." https://oxylabs.io/bounty. This webpage includes an offer of a "bounty" for  "prior art that will be  successfully used to invalidate Luminati's patents."

**ANSWER**: Teso LT admits that it has posted the quoted information above on its website in an attempt to stop Luminati's improper and unlawful activities against Teso LT and other competitors. Except as expressly admitted, Teso LT denies any remaining allegations in paragraph 25 of the Complaint.

26.    Upon information and belief, Tesonet has advertised the above $100,000 bounty on  its own website as well as on other publicly accessible websites, including Google. As shown in  the first two images below, Tesonet had placed an advertisement through its Oxylabs brand  specifically targeting the Luminati brand that displays its bounty against Luminati upon a search  of "luminati" in Google's webpage. The Oxylabs hyperlink directs viewers to Tesonet's "Bust the   Bully" webpage.  The below images are exemplary Tesonet advertisements posted since the filing  of the original complaint.

**ANSWER**: Teso LT admits that it has advertised on its website and on publicly accessible websites in an attempt to stop Luminati's improper and illegal activities against Teso LT and other competitors. On their face, the images appear to be exemplary of Teso LT's advertisements posted after the filing of the original complaint. Except as expressly admitted, Teso LT denies any remaining allegations in paragraph 26 of the Complaint.



luminati

| All | Images | News | Videos | Maps | More | Settings |

About 489,000 results (0.47 seconds)

### Threatened by Luminati.io? | Get $100,000 for Prior Art | oxylabs.io
[Ad] www.oxylabs.io/ ▼
We offer a financial reward for evidence against **Luminati**.io alleged patent infringement.
Get A Free Trial · Pricing Information · Location Coverage · View Features

🔒 https://www.google.com/search?q=luminati&oq=luminati&aqs=chrome..69i57j0l5.2328j0j8&sourceid=ch

luminati

| All | Images | News | Videos | Maps | More | Settings | Tools |

About 589,000 results (0.35 seconds)

### Invalidate Luminati.io patents | Alleged patent infringement
[Ad] www.oxylabs.io/bounty ▼
A financial reward for prior art that can be used to invalidate **Luminati**.io patents. Help us to prevent
**Luminati**.io from threatening companies for alleged patent infringement.

### Residential IP and Proxy Service for Businesses. Luminati
https://luminati.io/ ▼
World's largest proxy service with a residential proxy network of 36M IPs worldwide and proxy
management interface for zero coding. Start a 7-day free trial »
FAQ · About · Luminati SDK · Learning hub

Affordable price. Services. Rank Tracker API, SERP API, Keyword Data API.
Pricing · Docs · FAQ · APIs

### False claims by Luminati.io | $100,000 for Prior Art
[Ad] www.oxylabs.io/bounty ▼
A financial reward for prior art that can be used to invalidate **Luminati**.io patents. Help us to prevent
**Luminati**.io from threatening companies for alleged patent infringement.





27.     Upon information and belief, Tesonet directed the above advertising toward Luminati's customers and prospective customers seeking to harm Luminati's business relationships.

**ANSWER**: Teso LT denies any and all allegations in paragraph 27 of the Complaint.

28.     Upon information and belief, at least since the filing of the original complaint, Mr. Urtė Černiauskaitė, legal counsel at Tesonet, contacted former Luminati employees seeking information. Upon information and belief, Mr. Černiauskaitė has represented that Tesonet is willing to pay former Luminati employees for assistance and has an allocated budget to do so. Current and former Luminati employees are subject to a Personal Employment Agreement ("Employment Agreement"). The terms of the Employment Agreement include a confidentiality provision obligating the employee to keep in confidence Luminati's proprietary information. In addition to other proprietary information, at least one former employee approached by Mr. Černiauskaitė has knowledge regarding Luminati's residential service architecture.

**ANSWER**: Teso LT admits it has contacted former Luminati employees after the filing of the original complaint by Luminati.

29.     Upon information and belief, Tesonet has been seeking confidential information from former Luminati employees.

**ANSWER**: Teso LT denies any and all allegations in paragraph 29 of the Complaint.

30.     Tesonet has sent communications to email addresses registered in Luminati's residential proxy service, including customer emails and test emails generated by Luminati for the purpose of testing Luminati's proxy service. Upon information and belief, Tesonet has contacted Luminati customers using proprietary Luminati information derived

from at least Luminati's confidential customer lists. Upon information and belief, Tesonet has acquired this information through unauthorized access to Luminati's secure computer system.

**ANSWER**: Teso LT denies any and all allegations in paragraph 30 of the Complaint.

31. Upon information and belief, Tesonet has used Luminati's proprietary information to derive a competitive advantage interfering with Luminati's business relationships with its clients and causing Luminati to lose customers.

**ANSWER**: Teso LT denies any and all allegations in paragraph 31 of the Complaint.

### COUNT I
(Infringement of the '044 Patent)

32. Luminati repeats and re-alleges the allegations contained in paragraphs 1-31 of this Complaint as if fully set forth herein.

**ANSWER**: Teso LT repeats and incorporates by reference its answers to paragraphs 1-31 as if fully set forth herein.

33. The '044 Patent entitled "System and Method for Improving Internet Communication by Using Intermediate Nodes" was duly and legally issued by the U.S. Patent and Trademark Office on June 19, 2016 from Application No. 14/468,836 filed on August 26, 2014, claiming priority to provisional applications 61/870,815 filed on August 28, 2013. A true and accurate copy of the '044 Patent is attached hereto as Exhibit A.

**ANSWER**: Teso LT admits that the '044 Patent is entitled on its face "SYSTEM AND METHOD FOR IMPROVING INTERNET COMMUNICATION BY USING INTERMEDIATE NODES", with a listed issue date of January 19, 2016. Teso LT admits that on its face the '044 Patent purports to claim priority to Application No. 61/870,815. Teso LT

18

admits that a copy of the '044 Patent is attached to the Complaint as Exhibit A. Except as expressly admitted, Teso LT denies any remaining allegations in paragraph 33 of the Complaint.

34.     Each and every claim of the '044 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

**ANSWER**: Teso LT admits that 35 U.S.C. § 282 provides a presumption of validity for issued patents. Except as expressly admitted, Teso LT denies any remaining allegations in paragraph 34 of the Complaint.

35.     Luminati exclusively owns all rights, title, and interest in and to the '044 Patent and possesses the exclusive right of recovery, including the exclusive right to recover for past infringement.

**ANSWER**: Teso LT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 of the Complaint, and therefore denies any such allegations.

36.     Claim 81 of the '044 Patent recites:

Claim 81. A method for fetching over the Internet a first content, identified by a
first content identifier, by a first device, identified in the Internet by a first
identifier, from a second server identified in the Internet by a third
identifier via a second device identified in the Internet by a second
identifier, using a first server, the method comprising the steps of:
(a) sending the first identifier to the first server;
(b) sending a first request to the first server;
(c) receiving the second identifier from the first server;
(d) sending a second request to the second device using the second
identifier, the second request includes the first content identifier and the
third identifier; and
(e) receiving the first content from the second device.

**ANSWER**: Teso LT admits that on its face, claim 81 of the '044 Patent is recited in paragraph 36. Except as expressly admitted, Teso LT denies any remaining allegations in paragraph 36 of the Complaint.

37.     As described above in paragraphs 18-19, upon information and belief, Tesonet's OxyLabs proxy residential network comprises numerous devices each of which is identifiable by its own IP address ("identifier"), which are stored on Tesonet's servers. Consequently, Tesonet's OxyLabs proxy residential network would comprise at least a First Device and Second Device with their corresponding First Identifier and Second Identifier and a First Server.

**ANSWER**: Paragraph 37 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 37 of the Complaint.

38.     As described above in paragraphs 18-23, upon information and belief, this network would permit a user to access Internet content ("First Content"), identifiable by a content identifier such as a URL ("First Content Identifier") from a target server ("Second Server"), identifiable by its own corresponding IP address ("Third Identifier").

**ANSWER**: Paragraph 38 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 38 of the Complaint.

39.     As described above in paragraphs 18-23, upon information and belief, the user devices of the OxyLabs proxy residential network, any one of which could be a "First Device" sends its corresponding IP address ("First Identifier") to the OxyLabs server or "First Server," which stores these identifiers.

**ANSWER**: Paragraph 39 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 39 of the Complaint.

40.     As described above in paragraphs 18-23, upon information and belief, an OxyLabs customer can utilize their device, which would be the First Device, to send a request ("First Request") to the First Server, causing the First Server to respond by sending the Second Identifier back to the First Device. Upon information and belief, the OxyLabs customer can then send a second request ("Second Request"), comprising a First Content Identifier and a Third Identifier to the Second Device, which forwards the First Content Identifier to the Second Server. Upon information and belief, the Second Server responds by sending the requested First Content to the Second Device, which is forwarded back to the First Device.

**ANSWER**: Paragraph 40 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 40 of the Complaint.

41.     Tesonet has had actual notice of the '044 Patent since at least June 1, 2017, and has known, including by way of communications on and since June 1, 2017 and this lawsuit, that implementation of its OxyLabs residential proxy service would infringe at least claim 81 of the '044 Patent.

**ANSWER**: Teso LT admits it has had notice of the '044 Patent since June 1, 2017. The remainder of paragraph 41 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the remaining allegations in paragraph 41 of the Complaint.

42.     Tesonet has been and is now directly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 81 of the '044 Patent, by implementing its residential proxy service in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(a).

**ANSWER**: Paragraph 42 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 42 of the Complaint.

43.     Tesonet has been and is now indirectly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 81 of the '044 Patent, by providing this residential proxy service to its customers knowing that the use of such service infringes these claims in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(b).

**ANSWER**: Paragraph 43 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 43 of the Complaint.

44.     As a result of Tesonet's infringement of the '044 Patent, Luminati has suffered and continues to suffer damages. Thus, Luminati is entitled to recover from Tesonet the damages Luminati sustained as a result of Tesonet's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court under 35 U.S.C. § 284.

**ANSWER**: Paragraph 44 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 44 of the Complaint.

45.     Luminati has suffered damage because of the infringing activities of Tesonet, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for

which there is no adequate remedy at law unless Tesonet's infringing activities are preliminarily and permanently enjoined by this Court.

**ANSWER**: Paragraph 45 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 45 of the Complaint.

46.     Tesonet's infringement of the '044 Patent was, is, and continues to be deliberate and willful because Tesonet was and is on notice of the '044 Patent at least as early as June 1, 2017, yet it continued and continues to infringe the '044 Patent.

**ANSWER**: Paragraph 46 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 46 of the Complaint.

## COUNT II
(Infringement of the '866 Patent)

47.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-46 of this Complaint as it fully set forth herein.

**ANSWER**: Teso LT repeats and incorporates by reference its answers to paragraphs 1-46 as if fully set forth herein.

48.     The '866 Patent entitled "System and Method for Improving Internet Communication by Using Intermediate Nodes" was duly and legally issued by the U.S. Patent and Trademark Office on August 22, 2017 from Application No. 14/930,894 filed on August 22, 2017, a divisional of Application No. 14/468,836 that issued as the '044 Patent, both of which claim priority to provisional applications 61/870,815 filed on August 28, 2013. A true and accurate copy of the '866 Patent is attached hereto as Exhibit B.

**ANSWER**: Teso LT admits that the '866 Patent is entitled on its face "SYSTEM AND METHOD FOR IMPROVING INTERNET COMMUNICATION BY USING INTERMEDIATE NODES", with a listed issue date of August 22, 2017. Teso LT admits that on its face the '866 Patent purports to claim priority to Application Nos. 14/468,836 and 61/870,815. Teso LT admits that a copy of the '866 Patent is attached to the Complaint as Exhibit B. Except as expressly admitted, Teso LT denies any remaining allegations in paragraph 48 of the Complaint.

49.     Each and every claim of the '866 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

**ANSWER**: Teso LT admits that 35 U.S.C. § 282 provides a presumption of validity for issued patents. Except as expressly admitted, Teso LT denies any remaining allegations in paragraph 49 of the Complaint.

50.     Luminati exclusively owns all rights, title, and interest in and to the '866 Patent and possesses the exclusive right of recovery, including the exclusive right to recover for past infringement.

**ANSWER**: Teso LT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 of the Complaint, and therefore denies any such allegations.

51.     Claim 15 of the '866 Patent recites:

Claim 15. A method for fetching a content over the Internet from a first server identified in the Internet by a second identifier via a group of multiple devices, each identified in the Internet by an associated group device identifier, the method comprising the step of partitioning the content into a plurality of content slices, each content slice containing at least part of the content, and identified using a content slice identifier, and for each of the content slices, comprising the steps of:
(a) selecting a device from the group;

24

(b) sending over the Internet a first request to the selected device using the group device identifier of the selected device, the first request including the content slice identifier and the second identifier;
(c) in response to receiving the sent first request by the selected device, receiving over the Internet the content slice from the selected device; and wherein the method further comprising the step of constructing the content from the received plurality of content slices, and
wherein each of the devices in the group is a client device.

**ANSWER**: Teso LT admits that on its face, claim 15 of the '866 Patent is recited in paragraph 51. Except as expressly admitted, Teso LT denies any remaining allegations in paragraph 51 of the Complaint.

52.     As described above in paragraphs 18-19, upon information and belief, Tesonet's OxyLabs proxy residential network comprises numerous devices, each of which is a client device identifiable by its own identifier. Tesonet's OxyLabs proxy residential network permits Tesonet's customers to request content from the customer's device ("First Device") identifiable by its own IP address ("First Identifier") via a proxy device ("Second Device"), selected from a group of client devices ("Group") each of which has its own IP address ("Group Device Identifier"), from a target server ("First Server") identifiable by its own IP address  ("Second Identifier"). As further described above, this content may be divided into portions ("Content Slices") identifiable by their own identifiers ("Content Slice Identifier").

**ANSWER**: Paragraph 52 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 52 of the Complaint.

53.     As described above in paragraphs 18-23, upon information and belief, this network would permit the First Device to select a Second Device from the Group and send a request ("First Request") over the internet to the Second Device using the selected second device

IP address ("Second Device Identifier"). This First Request includes the Content Slice Identifier and Second Identifier.

**ANSWER**: Paragraph 53 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 53 of the Complaint.

54.     As described above in paragraphs 18-23, upon information and belief, the above Second Device responds to the First Request by sending a second request ("Second Request") to the First Server with the Content Slice Identifier. The First Server responds by sending the requested Content Slice to the Second Device, which forwards the Content Slice back to the receiving First Device. The First Device then constructs the content from the plurality of Content Slices.

**ANSWER**: Paragraph 54 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 54 of the Complaint.

55.     Tesonet has had actual notice of the '866 Patent since at least February 14, 2018, and has known, including by way of communications on and since February 14, 2018 and this lawsuit, that implementation of its OxyLabs residential proxy service would infringe at least claim 15 of the '866 Patent.

**ANSWER**: Teso LT admits it has had notice of the '866 Patent since February 14, 2018. The remainder of paragraph 55 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the remaining allegations in paragraph 55 of the Complaint.

56.     Tesonet has been and is now directly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '866 Patent, by implementing its residential proxy service in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(a).

**ANSWER**: Paragraph 56 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 56 of the Complaint.

57.     Tesonet has been and is now indirectly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '866 Patent, by providing this residential proxy service to its customers knowing that the use of such service infringes these claims in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(b).

**ANSWER**: Paragraph 57 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 57 of the Complaint.

58.     As a result of Tesonet's infringement of the '866 Patent, Luminati has suffered and continues to suffer damages. Thus, Luminati is entitled to recover from Tesonet the damages Luminati sustained as a result of Tesonet's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court under 35 U.S.C. § 284.

**ANSWER**: Paragraph 58 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 58 of the Complaint.

59.     Luminati has suffered damage because of the infringing activities of Tesonet, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless Tesonet's infringing activities are preliminarily and permanently enjoined by this Court.

**ANSWER**: Paragraph 59 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 59 of the Complaint.

60.     Tesonet's infringement of the '866 Patent was, is, and continues to be deliberate and willful because Tesonet was and is on notice of the '866 Patent at least as early as February 14, 2018, yet it continued and continues to infringe the '866 Patent.

**ANSWER**: Paragraph 60 is proffered as a legal conclusion to which Teso LT believes no response is required. To the extent that a response is required, Teso LT denies the allegations in paragraph 60 of the Complaint.

### COUNT III
(Misappropriation of Trade Secret Under Federal Defense of Trade Secret Act Under 18 U.S.C. § 1836 *et sec.*)

61.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-60 of this  Complaint as if fully set forth herein.

**ANSWER**: Teso LT repeats and incorporates by reference its answers to paragraphs 1-60 as if fully set forth herein.

62.     Luminati takes reasonable measures to protect the confidentiality of valuable trade secrets related to its residential proxy service, including automated and technical measures in  addition to the requirement that its employees protect the confidentiality of

Luminati trade secrets.  This non-public information has actual independent economic value derived from Luminati's  experience in the residential proxy service field.

**ANSWER**: Teso LT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62 of the Complaint, and therefore denies any such allegations.

63.    Luminati's residential proxy service is intended for use in interstate or foreign  commerce, including commerce in the Eastern District of Texas.

**ANSWER**: Teso LT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 of the Complaint, and therefore denies any such allegations.

64.    Upon information and belief, Tesonet misappropriated Luminati's trade secrets  including but not limited to Luminati's customer list for the purpose of competing with Luminati's residential proxy service.

**ANSWER**: Teso LT denies any and all allegations in paragraph 64 of the Complaint.

65.    Luminati has suffered damages and Tesonet has been unjustly enriched as Luminati  lost business to Tesonet's competing Oxylabs service as a result of Tesonet's misappropriation of  Luminati's trade secrets.

**ANSWER**: Teso LT denies any and all allegations in paragraph 65 of the Complaint.

66.    Tesonet's misappropriation of Luminati trade secrets was willful and malicious.

**ANSWER**: Teso LT denies any and all allegations in paragraph 66 of the Complaint.

67.     Luminati is entitled to recover the actual loss suffered by Luminati, any additional damages to account for Tesonet's unjust enrichment, and exemplary damages as a result  of  Tesonet's misappropriation of its trade secrets under 18 U.S.C. § 1836(b)(3)(B) and

(C) *et sec.*

**ANSWER**: Teso LT denies any and all allegations in paragraph 67 of the Complaint.

## COUNT IV
(Intentional Unauthorized Access of Protected Computer Under 18 U.S.C. § 1030(g) *et sec.*)

68.   Luminati repeats and re-alleges the allegations contained in paragraphs 1-67 of this  Complaint as if fully set forth herein.

**ANSWER**: Teso LT repeats and incorporates by reference its answers to paragraphs 1-67 as if fully set forth herein.

69.   Upon information and belief, Tesonet intentionally accessed Luminati's computer  system without authorization and misappropriated Luminati's trade secrets, including Luminati's  customer list relating to Luminati's residential proxy service which is used interstate and foreign  commerce, including commerce in the Eastern District of Texas.

**ANSWER**: Teso LT denies any and all allegations in paragraph 69 of the Complaint.

70.   Luminati suffered damage through the misappropriation of data on its computer  system. Luminati also suffered loss in excess of $5,000 in value within the last year through the  expense of investigating the intrusion in Luminati's computer system.

**ANSWER**: Teso LT denies any and all allegations in paragraph 70 of the Complaint.

71.   Luminati is entitled to recover compensatory damages and an injunction against the  use of Luminati's confidential information under 18 U.S.C. § 1030(g).

**ANSWER**: Teso LT denies any and all allegations in paragraph 71 of the Complaint.

## COUNT V
(False Advertising Under 15 U.S.C. § 1125(a) *et sec.*)

72.   Luminati repeats and re-alleges the allegations contained in paragraphs 1-71 of this  Complaint as if fully set forth herein.

30

**ANSWER**: Teso LT repeats and incorporates by reference its answers to paragraphs 1-71 as if fully set forth herein.

73.     Upon information and belief, since the filing of the original complaint and in retaliation thereto, Tesonet has engaged in false advertising against Luminati under 15 U.S.C. § 1125(a) by making false advertisements to the public at large, including Luminati's customers.  Through these false advertisements, Luminati believes and thus avers that Tesonet has materially represented Luminati's business practices, the basis for Luminati's complaint against Tesonet, the  value of Luminati's intellectual property rights, and the nature and characteristics of Tesonet's  own residential proxy service.

**ANSWER**: Under the assumption that "represented" was intended to be "misrepresented," Teso LT denies any and all allegations in paragraph 73 of the Complaint.

74.     Tesonet caused its false advertising to enter interstate commerce, including upon information and belief in the Eastern District of Texas. Tesonet's false advertising has at been  distributed through at least Internet communications and advertisements including, but not limited  to, advertisements placed with Google responsive to queries regarding Luminati.

**ANSWER**: Teso LT denies any and all allegations in paragraph 74 of the Complaint.

75.     Tesonet's actions have deceived, or are likely to deceive, a substantial segment of  Luminati's customers who have purchased or would otherwise purchase Luminati's residential  proxy service.

**ANSWER**: Teso LT denies any and all allegations in paragraph 75 of the Complaint.

76.     Tesonet's actions have caused Luminati injury to a commercial interest in both its  business reputation and its sales by its customers. Luminati's commercial injuries are a direct   result of Tesonet's false statements directed to Luminati's customers regarding

Luminati's  intellectual property and business practices.

**ANSWER**: Teso LT denies any and all allegations in paragraph 76 of the Complaint.

77.    Luminati is entitled to a judgment that Tesonet has engaged in false advertising  against Luminati, which is the direct cause of Luminati's injuries to its commercial interests in its  reputation and sales under 15 U.S.C. 1125(a), and damages pursuant to 15 U.S.C. § 1117.

**ANSWER**: Teso LT denies any and all allegations in paragraph 77 of the Complaint.

78.    This case is exceptional, given Tesonet's extensive targeting of Luminati customers  and  prospective  customers  through  its  disparaging  and  deceptive  online advertising  campaign.  Luminati is entitled to an award of attorneys' fees as this case is exceptional under 15 U.S.C. §  1117(a).

**ANSWER**: Teso LT admits that this case is exceptional due to Luminati's conduct, thus entitling Teso LT to an award of attorneys' fees under 15 U.S.C. §  1117(a). Otherwise, Teso LT denies any and all allegations in paragraph 78 of the Complaint.

**COUNT VI**
(Tortious Interference with Luminati's Business Relationships)

79.    Luminati repeats and re-alleges the allegations contained in paragraphs 1-78 of this  Complaint as if fully set forth herein.

**ANSWER**: Teso LT repeats and incorporates by reference its answers to paragraphs 1-78 as if fully set forth herein.

80.    Luminati has contractual relationships with numerous customers, including customers that are registered in the Eastern District of Texas and/or use Luminati's residential  proxy service in the Eastern District of Texas.

**ANSWER**: Teso LT is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 80 of the Complaint, and therefore denies any such allegations.

81.    Upon information and belief, Tesonet has used Luminati proprietary information to intentionally and willfully contact Luminati customers and interfere with Luminati's relationship with these customers.

**ANSWER**: Teso LT denies any and all allegations in paragraph 81 of the Complaint.

82.    Luminati has suffered damages and Tesonet has been unjustly enriched as Luminati lost business to Tesonet's competing Oxylabs service. Tesonet's interference with Luminati's customer relationships was the proximate cause of this lost business.

**ANSWER**: Teso LT denies any and all allegations in paragraph 82 of the Complaint.

### <u>PRAYER FOR RELIEF</u>

Teso LT denies that Plaintiff is entitled to the judgment and relief set forth in paragraphs (A) through (S) on pages 22-24 of the Amended Complaint, or any relief for any remaining allegations set forth in the Complaint.

## II. AFFIRMATIVE DEFENSES

In further answer to the Complaint, and as separate affirmative defenses thereto, Teso LT alleges as follows. Teso LT expressly states that its affirmative defenses are made without prejudice to any denial in its Answer, and without admission to any allegation in the Complaint, unless expressly admitted above. Teso LT reserves the right to assert additional defenses that would be rendered appropriate in view of future discovery, information, and/or analysis.

### First Affirmative Defense:  Noninfringement

83.      Teso LT has not infringed, does not currently infringe, and will not infringe any valid and enforceable claim of the '044 Patent or the '866 Patent directly, indirectly, by inducement, contributorily, literally or under the doctrine of equivalents, or in any other manner.

### Second Affirmative Defense:  Invalidity

84.      Each and every claim of the '044 patent and the '866 Patent is invalid for failing to comply with one or more of the provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

### RESERVATION OF DEFENSES

Teso LT hereby reserves any and all defenses that are available under the Federal Rules of Civil Procedure and the U.S. Patent Laws and any other defenses, in law or in equity that may now exist or become available as a result of discovery and further factual investigation during this litigation.

## III. COUNTERCLAIMS

85.     For its counterclaims against Luminati Networks Ltd. ("Luminati" or "Plaintiff"), Counterclaimant UAB Teso LT (formerly known as UAB Tesonet) ("Teso LT") asserts that Teso LT does not directly, indirectly, by inducement, contributorily, literally or under the doctrine of equivalents, infringe United States Patent Nos. 9,241,044 ("the '044 Patent"), 9,742,866 ("the '866 Patent") and/or such patents are invalid for failing to comply with one or more of the provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112. Further, Luminati has engaged in false advertising against Teso LT, under 15 U.S.C. § 1125(a), and these false statements are the direct cause of Teso LT's injuries to its commercial interests in its reputation and sales.

## PARTIES

86.     Counterclaimant UAB Teso LT (formerly known as UAB Tesonet) ("Teso LT") is a corporation organized and existing under the laws of Lithuania, having a principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

87.     On information and belief, and as stated by Plaintiff in its Complaint, Plaintiff Luminati Networks Ltd. ("Luminati") is an Israeli company having a principal place of business at 3 Hamahshev St., Netanya 42507, Israel.

## NATURE OF THE ACTION

88.     The counterclaims herein arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under 21 U.S.C. § 355, based upon an actual controversy between the parties. Teso LT seeks entry of a declaratory judgment order that the '044 Patent and the '866 Patent are not infringed by Teso LT, and/or an order that the '044 Patent and the '866 Patent are invalid.

## JURISDICTION AND VENUE

89.     This Court has subject matter jurisdiction over the asserted counterclaims under 28 U.S.C. §§ 1331, 1337(a) and 1338(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 35 U.S.C. § 1 *et seq*.

90.     Plaintiff has submitted to personal jurisdiction in this Court by bringing suit against Teso LT in this Court and, based on information and belief, Luminati's business activities in the district and the State of Texas.

91.     Teso LT has waived objection to and submitted themselves to the personal jurisdiction of the Court over Teso LT, solely for the purposes of this litigation, the subject matter of the Complaint, the specific patent contained in the Complaint, and the counterclaims below.

92.     Venue is proper under 28 U.S.C. § 1391, and as a result of Luminati's choice of forum.

93.     The counterclaims encompass an action based on an actual controversy between Counterclaimant Teso LT, and Plaintiff Luminati concerning the non-infringement and/or invalidity of the '044 Patent and the '866 Patent.

## BACKGROUND

94.     The '044 patent is entitled on its face "SYSTEM AND METHOD FOR IMPROVING INTERNET COMMUNICATION BY USING INTERMEDIATE NODES," with a listed issue date of January 19, 2016, and with listed purported inventors named as Derry Shribman and Ofer Vilenski. On information and belief, and based on statements made by Plaintiff in its Complaint, Plaintiff Luminati is the current assignee of the '044 patent.

95.     The '866 patent is entitled on its face "SYSTEM AND METHOD FOR
IMPROVING INTERNET COMMUNICATION BY USING INTERMEDIATE NODES," with
a listed issue date of August 22, 2017, and with listed purported inventors named as Derry
Shribman and Ofer Vilenski. On information and belief, and based on statements made by
Plaintiff in its Complaint, Plaintiff Luminati is the current assignee of the '866 patent.

96.     On June 20, 2018, Douglas J. Kline from Goodwin Procter LLP, outside counsel
for Teso LT, sent a responsive letter to Luminati's counsel David L. Cohen, providing detailed
non-infringement positions and refuting Luminati's allegation that Teso LT is required to take a
license to U.S. Patent No. 8,560,604 (not asserted in this litigation), the '044 patent and the '866
patent to use, sell, offer for sale, or manufacture its Oxylabs product. This June 20, 2018, letter
also notified Luminati that Teso LT was aware that Luminati has been "threatening Teso LT
customers, including customers operating entirely outside of the United States, with allegations
of patent infringement." The letter further notified Luminati that "[t]his conduct is highly
improper" because "Luminati has no enforceable patent rights outside of the United States" and
thus "can have no good faith basis" to accuse "companies outside of the United States of patent
infringement." The letter also puts Luminati on notice that "Teso LT's Oxylabs technology
differs substantially from the methods described in Luminati's patents." Thus, "Teso LT does not
require and therefore declines to take a license to" the '044 and '866 patents. Further, the letter
put Luminati on notice that "Luminati's communications to Teso LT's customers, therefore,
constitutes, without limitation, false advertising, unfair competition, trade libel, and tortious
interference." Finally, the letter demanded Luminati "immediately stop this improper and anti-
competitive behavior" or Teso LT will "pursue all available remedies". A true and correct copy

of the June 20, 2018, letter from Douglas J. Kline of Goodwin Procter LLP is hereby attached as Exhibit 2.

97.    Plaintiff filed a patent infringement Complaint against Teso LT in this Court on July 19, 2018, alleging infringement of the '044 patent and the '866 patent.

98.    Teso LT denies that it has infringed, currently infringes or will infringe, directly or indirectly, by inducement, contributorily, literally or under the doctrine of equivalents, any valid and enforceable claim of the '044 patent or the '866 patent. Teso LT further asserts that the claims of the '044 patent and the '866 patent are invalid for failure to satisfy one or more of the provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

## FIRST COUNTERCLAIM

### Declaratory Judgment of Non-Infringement of the '044 Patent by Teso LT

99.    Teso LT repeats and realleges paragraphs 83-98 as if fully set forth herein.

100.    This counterclaim is proper and arises under 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

101.    Based on Plaintiff's assertions against Teso LT in its Complaint concerning the '044 patent, a justiciable, actual, substantial and continuing case and controversy with immediacy exists between Teso LT and Plaintiff, warranting the issuance of a declaration of rights by this Court concerning the '044 patent.

102.    Plaintiff has asserted in its Complaint that Teso LT's OxyLabs product infringes or will infringe directly or indirectly at least claim 81 of the '044 patent.

103.    Teso LT asserts that it has not infringed, does not currently infringe, and will not infringe any valid and enforceable claim of the '044 patent directly, indirectly, by inducement, contributorily, literally or under the doctrine of equivalents, or in any other manner.

104.     As a non-limiting example, Teso LT's OxyLabs product does pass the second identifier to the first device, as implicitly or explicitly required in each of the independent claims of '044 patent. Conversely to the methods recited in the '044 patent, with the Oxylabs product the first (client) device is never allowed to know the identity of the second (proxy) device and the first device does not communicate directly with the second device..

105.     Teso LT is entitled to a declaration that the manufacture, use, sale, offer for sale, importation, exportation, and/or marketing of Teso LT's OxyLabs product does not and will not infringe any valid claim of the '044 patent.

106.     This case is exceptional due to Plaintiff's conduct in this case and Teso LT is entitled to an award of attorney's fees under 35 U.S.C. § 285.

## SECOND COUNTERCLAIM

### Declaratory Judgment of Invalidity of the '044 patent

107.     Teso LT repeats and realleges paragraphs 83-106 as if fully set forth herein.

108.     This counterclaim is proper and arises under 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

109.     Based on Plaintiff's assertions against Teso LT in its Complaint concerning the '044 patent, a justiciable, actual, substantial and continuing case and controversy with immediacy exists between Teso LT and Luminati, warranting the issuance of a declaration of rights by this Court concerning the '044 patent.

110.     Teso LT asserts that each and every claim of the '044 patent is invalid for failing to comply with one or more of the provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.  As one non-limiting example, each claim of the '044 patent is invalid under 35 U.S.C. § 101 as drawn to non-statutory subject matter. Specifically, the claims are drawn to abstract ideas and lacking patentable utility. *See*

*Alice Corp. Pty v. CLS Bank Int'l*, 573 U.S.208, 134, S.Ct. 2347, 2360 (2014); *see also Intellectual Ventures, LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015).

111.    As another non-limiting example, at least independent claims 1, 81 and 108 of the '044 patent are invalid as obvious under 35 U.S.C. § 103 over the prior art, including but not limited to Rao, U.S. Patent No. 7,788,378 ("Rao"), Wang, U.S. Patent App. Pub. No. 2008/0109446 ("Wang") and the Bunitu Trojan and VIP72 proxy service ("VIP72") (https://www.youtube.com/watch?v=L0Hct2kSnn4, last accessed 11/20/2018), which was publicly known and available as of at least 2008, taken alone or in any combination. Additionally, at least the following services and software were publicly known and available more than one year prior to the earliest priority date of the '044 patent: Trojans including, but not limited to, Andromeda (also known as Gamaru or Wauchos) ("Andromeda"), publicly known and available as of at least 2011 (https://www.youtube.com/watch?v=yRRYpFLbKNU) and SpyEye, known as of at least 2010 (https://www.symantec.com/security-center/writeup/2010-020216-0135-99; http://securesql.info/riskyclouds/spyeye-user-manual); anonymizing proxy services, including but not limited to, services such as Easy Hide IP ("Easy Hide"), publicly known and available as of at least 2011 (https://www.youtube.com/watch?v=uIwkf1sOfdA  and https://www.youtube.com/watch?v=iFEMT-o9DTc); and content delivery network services, including but not limited to, services such as CoralCDN ("CoralCDN") (https://pdos.csail.mit.edu/6.824/papers/freedman-coral.pdf), publicly known and available as of at least 2004. Each of these services or software packages include publicly known functionality that, taken alone or in any combination, render at least the independent claims of the '044 patent invalid.

112.   Teso LT is entitled to a declaration that the claims of the '044 patent are invalid under one or more provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

113.   This case is exceptional, because, *inter alia*, Plaintiff's claims of infringement of the '044 patent are meritless, and Teso LT is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

## THIRD COUNTERCLAIM

### Declaratory Judgment of Non-Infringement of the '866 Patent by Teso LT

114.   Teso LT repeats and realleges paragraphs 83-113 as if fully set forth herein.

115.   This counterclaim is proper and arises under 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

116.   Based on Plaintiff's assertions against Teso LT in its Complaint concerning the '866 patent, a justiciable, actual, substantial and continuing case and controversy with immediacy exists between Teso LT and Luminati, warranting the issuance of a declaration of rights by this Court concerning the '866 patent.

117.   Plaintiff has asserted in its Complaint that Teso LT's OxyLabs product infringes or will infringe directly or indirectly at least claim 15 of the '866 patent.

118.   Teso LT asserts that it has not infringed, does not currently infringe, and will not infringe any valid and enforceable claim of the '866 patent directly, indirectly, by inducement, contributorily, literally or under the doctrine of equivalents, or in any other manner. As one non-limiting example, and conversely to independent claims 1 and 15 of the '866 patent, Teso LT's OxyLabs product does operate on "slices" or other partial elements of any requested content to effect transmission or receipt of the content.

119.     Teso LT is entitled to a declaration that the manufacture, use, sale, offer for sale, importation, exportation, and/or marketing of Teso LT's OxyLabs Product does not and will not infringe any valid claim of the '866 patent.

120.     This case is exceptional, because, *inter alia*, Plaintiff's claims of infringement of the '866 patent are meritless, and Teso LT is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

**FOURTH COUNTERCLAIM**

**Declaratory Judgment of Invalidity of the '866 patent**

121.     Teso LT repeats and realleges paragraphs 83-120 as if fully set forth herein.

122.     This counterclaim is proper and arises under 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

123.     Based on Plaintiff's assertions against Teso LT in its Complaint concerning the '866 patent, a justiciable, actual, substantial and continuing case and controversy with immediacy exists between Teso LT and Plaintiff, warranting the issuance of a declaration of rights by this Court concerning the '866 patent.

124.     Teso LT asserts that each and every claim of the '866 patent is invalid for failing to comply with one or more of the provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.  As one non-limiting example, each claim of the '866 patent is invalid under 35 U.S.C. § 101 as drawn to non-statutory subject matter. Specifically, the claims are drawn to abstract ideas and lacking patentable utility. *See Intellectual Ventures, LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015).

125.     As another non-limiting example, each claim of the '866 patent is invalid under 35 U.S.C. § 112(b) as indefinite for failure to particularly point out and distinctly claim subject

matter which the inventors regard as the invention. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 527 U.S. 898, 910 (2014).

126.    As another non-limiting example, at least independent claims 1 and 15 of the '866 patent are invalid as obvious under 35 U.S.C. § 103 over the prior art, including but not limited to Dorso, U.S. Patent App. Pub. No. 2011/0066924 ("Dorso"), Gouge, U.S. Patent No. 9,253,164 ("Gouge"), Wang, U.S. Pat. App. Pub. No. 2008/0109446 ("Wang"), the Bunitu Trojan and VIP72 proxy service ("VIP72") (https://www.youtube.com/watch?v=L0Hct2kSnn4, last accessed 11/20/2018),which was publicly known and available as of at least 2008, and content delivery network services, such as CoralCDN, (https://pdos.csail.mit.edu/6.824/papers/freedman-coral.pdf), which was publicly known and available as of at least 2004, taken alone or in any combination.

127.    Teso LT is entitled to a declaration that the claims of the '866 patent are invalid under one or more provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

128.    This case is exceptional, because, *inter alia*, Plaintiff's claims of infringement of the '866 patent are meritless, and Teso LT is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

## FIFTH COUNTERCLAIM

129.    Teso LT repeats and realleges paragraphs 83-128 as if fully set forth herein.

130.    This counterclaim is proper and arises under the Lanham Act, 15 U.S.C. § 1125(a).

131.    Based on Plaintiff's assertions against Teso LT in its Complaint concerning the '044 patent and the '866 patent, a justiciable, actual, substantial and continuing case and

controversy with immediacy exists between Teso LT and Plaintiff, warranting an affirmative

judgment and an award of damages by this Court.

132.    Teso LT asserts that Plaintiff has engaged in false advertising against Teso LT,

under 15 U.S.C. § 1125(a) by making false advertisements to Teso LT's customers and partnered

application developers that Teso LT's OxyLabs product are illegal to use and that it is illegal to

sell products using OxyLabs software data kits ("SDK"). Through these false advertisements,

Plaintiff has materially misrepresented the nature, characteristics, and qualities of its own

products and Teso LT's OxyLabs products using OxyLabs SDK. Specifically, Plaintiff has

made, and continues to make, improper allegations to Teso LT's customers and partnered

application developers that they are infringing at least the '044 and the '866 patents by using the

OxyLabs products and/or SDK.

133.    Based on the above facts and conduct, Teso LT is informed and believes, and thus

avers, that Plaintiff has made and continues to make allegations of patent infringement in bad

faith because Plaintiff knows, or should know, after a reasonable inquiry and due diligence that

these allegations are unfounded, not supported, and wholly improper.

134.    Plaintiff caused its false advertising to enter interstate commerce. Plaintiff's false

advertising has at least been distributed through at least Internet communications and personal

discussions with Teso LT's customers from at least May 2018.

135.    Plaintiff's false advertising and material misrepresentations have deceived, or are

likely to deceive, a substantial segment of Teso LT's customers who have purchased or would

otherwise purchase the OxyLabs products, and diverted sales to Luminati.

136.    Plaintiff's actions have caused Teso LT injury to a commercial interest in both its

business reputation and its sales by leading customers, partnered application developers, and

44

others in the industry into believing that Teso LT, through its OxyLabs product, is engaged in

illegal activities of infringing the '044 and the '866 patent . *Lexmark Int'l., Inc. v. Static Control*

*Components Inc.*, 572 U.S. 118, 138 (2014). Teso LT's commercial injuries are a direct result of

Plaintiff's false statements directed to Teso LT's customers regarding Teso LT and its OxyLabs

product. *Id.* at 133, 138.

137.    Teso LT is entitled to a judgment that Plaintiff has engaged in false advertising

against Teso LT, which is the direct cause of Teso LT's injuries to its commercial interests in its

reputation and sales under 15 U.S.C. § 1125(a), and damages pursuant to 15 U.S.C. § 1117.

138.    This case is exceptional, because, *inter alia*, Plaintiff's advertisement of its false

claims of infringement of the '044 patent and the '866 patent are meritless and made in bad faith,

and Teso LT is entitled to an award of attorneys' fees under 15 U.S.C. § 1117(a).

## DEMAND FOR JUDGMENT

WHEREFORE, Teso LT prays for the following relief:

A.    Dismissal of all claims against Teso LT with prejudice and denying all relief

requested by Plaintiff;

B.    A declaration that Teso LT has not infringed and will not infringe, directly,

indirectly, by inducement, contributorily, literally or under the doctrine of equivalents, or in any

other manner, any valid and enforceable claim of the '044 patent or the '866 patent;

C.    A declaration that Teso LT has a lawful right to manufacture, use, import, market,

sell and/or offer to sell Teso LT's OxyLabs products;

D.    A declaration that all claims of the '044 patent and the '866 patent are invalid

and/or unenforceable;

E.      A judgment that Plaintiff has engaged in false advertising against Teso LT, which has caused Teso LT's injuries to its commercial interests in its reputation and sales, and order requiring Plaintiff to pay monetary relief to Teso LT, including (i) profits received by Plaintiff and/or damages sustained by Teso LT as a result of Plaintiff's false advertising and (ii) damages in the form of money to be spent on corrective advertising, to dispel any actual confusion that may have already occurred among relevant consumers and in the marketplace by virtue of Plaintiff's false advertising;

F.      That Plaintiff be found to have acted willfully in its false advertising, and that monetary relief for Plaintiff's false advertising be increased due to the willful nature of Plaintiff's false advertising pursuant to 15 U.S.C. § 1117;

G.      An injunction enjoining Plaintiff, its officers, employees, agents, representatives, attorneys and others acting on its or their behalf, from committing further acts of false advertising described herein and;

H.      A declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, 15 U.S.C. § 1117 and/or other applicable laws, and that Teso LT is entitled to recover its reasonable attorney's fees and costs upon prevailing in this action; and

I.      An award to Teso LT of such further relief as this Court may deem necessary, just and proper.

Respectfully submitted,

Dated: December 21, 2018

By: _____
Michael C. Smith
michaelsmith@siebman.com
Siebman, Forrest, Burg & Smith LLP
113 East Austin Street
Marshall, TX 75671
Telephone: (903) 938-8900

*Of counsel:*
Paul S. Tully, Ph.D.
Kurt W. Rohde
Andrea K. Orth
McDONNELL BOEHNEN HULBERT &
BERGHOFF LLP
300 South Wacker Drive
Chicago, Illinois 60606
(312) 913-0001

*Attorneys for UAB Teso LT*