IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Luminati Networks Ltd.,<br><br>  Plaintiff,<br><br>  v.<br><br>UAB Tesonet,<br><br>  Defendant. | Civil Action No.<br>2:18-cv-00299-JRG |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
<u>MOTION TO DISQUALIFY CONSULTANT</u>**

**TABLE OF CONTENTS**

I. Introduction ..................................................................................................................... 1

II. Factual Background ........................................................................................................ 2

    A. The Protective Order .......................................................................................... 2

    B. Dr. Kiškis Is A Uniquely And Highly Qualified Attorney And Professor Of Law ...... 2

    C. Teso's Disclosure Of Dr. Kiškis And Luminati's Objection ........................................ 5

III. It Is Luminati's Burden To Show Good Cause To Disqualify Dr. Kiškis ......................... 6

IV. The Court Should Not Disqualify Dr. Kiškis From Serving As A Consultant ................... 7

    A. Dr. Kiškis Is Not Representing, And Will Not Represent, Teso In The Currently Pending Lithuanian Proceedings Against Luminati ..…………………………… 7

    B. Dr. Kiškis' Lithuanian Residency Is Not A Basis To Disqualify Him Under…..…… 8
        1. There is no justification to preclude non-U.S. residents from qualifying under the Protective Order ................................................................................... 8

        2. This Court and Luminati have ample legal and practical recourse in the unlikely event that Dr. Kiškis violates the Protective Order ............................... 10

    C. Luminati's Non-Patent Allegations Provide No Basis To Disqualify Dr. Kiškis....... 13

V. Conclusion ..................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allergan, Inc. v. Sandoz Inc.*,
   No. 2:09-CV-182, 2011 WL 2563238 (E.D. Tex. June 28, 2011)............................................13

*English Feedlot, Inc. v. Norden Labs., Inc.*,
   833 F. Supp. 1498 (D. Colo. 1993)...........................................................................................10

*ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Ops., Inc.*,
   251 F.R.D. 238 (E.D. Tex. 2008).....................................................................................6, 7, 10

*Stone Connection, Inc. v. Simpson*,
   No. 4:07-CV-431, 2008 WL 1927033 (E.D. Tex. Apr. 28, 2008).........................................6, 7

**OTHER AUTHORITIES**

Lithuanian Code of Ethics for Advocates................................................................................12

Extradition Treaty Between the Government of the United States of America and the
   Government of the Republic of Lithuania (2001).....................................................................11

Mutual Legal Assistance Agreement with the European Union and the United States of
   America ....................................................................................................................................11

Mutual Legal Assistance Treaties with the European Union, Germany, and Japan,
   98 Am. J. Int'l L. 596, 596 (2004) ...........................................................................................11

Fed. R. Civ. P. 26(c) ......................................................................................................................6

Fed. R. Civ. P. 37..........................................................................................................................13

Treaty Between the Government of the United States of America and the Government of
   the Republic of Lithuania on Mutual Legal Assistance in Criminal Matters (1998)...............11

Defendant UAB Teso LT ("Teso"), files this Response to Plaintiff Luminati Networks Ltd.'s ("Luminati") Motion to Disqualify Consultant (ECF No. 55) ("Motion"), and respectfully shows as follows:

## I. INTRODUCTION

Teso seeks to designate Dr. Mindaugas Kiškis—a Lithuanian-licensed intellectual-property attorney, university faculty member, and tenured Professor of Law—as an outside consultant under the terms of the Protective Order. Luminati objects to Dr. Kiškis acting as a consultant and seeks to have this Court essentially implement a new rule that a party can never qualify an overseas consultant under a protective order where (i) foreign proceedings involving the parties exist and (ii) the plaintiff asserts claims in the present lawsuit for alleged trade-secret misappropriation.

No authority exists supporting such a rule, and no reason exists to exclude Dr. Kiškis from consulting in the current case. Each of Luminati's "concerns" is unfounded. *First*, Dr. Kiškis is *not* representing Teso in the currently pending Lithuanian proceedings, nor will he be. *Second*, Dr. Kiškis' experience as a licensed attorney and law professor uniquely qualifies him to provide invaluable advice to Teso in the instant case. This is especially so given his familiarity with Teso and its products, and the fact that he speaks Lithuanian, Teso's native language. *Third*, Dr. Kiškis has declared, under penalty of perjury, that he will comply with the Protective Order and voluntarily consented to the jurisdiction of this Court for the purpose of enforcement of the Protective Order. There are severe adverse consequences (both practical and legal) that would arise in the event of a violation of the Protective Order.

To disqualify Dr. Kiškis from serving as a Teso consultant simply because he resides outside the United States is an extreme result that is unwarranted by the law, unjustified by the facts

here, and unfair to all future litigants that wish to retain foreign consultants. Accordingly, Luminati has not demonstrated the requisite good cause and cannot meet its burden to show the need to disqualify Dr. Kiškis from serving as a consultant.

## II.     FACTUAL BACKGROUND

### A.     The Protective Order

As is common with protective orders used in patent-infringement cases, this case's Protective Order allows the parties to designate certain sensitive documents as "Confidential," "Restricted – Attorneys' Eyes Only," or "Restricted – Confidential Source Code." ECF No. 39, ¶¶ 5, 9-10. The receiving party's consultants or experts may access these protected materials provided they sign the Undertaking attached as Exhibit A to the Protective Order and provide the opposing party with their current *curriculum vitae*. *Id*., ¶¶ 5(e), 9, 10(e). Any Designated Material or Protected Material obtained by a party in this litigation may only be used for purposes of (i) this litigation and (ii) a PTO or PTAB proceeding concerning a patent-in-suit that Teso initiates or where Teso is named as a real-party-in-interest ("Related Proceeding"). *Id*., ¶ 1.

Upon disclosure of the consultant or expert, the noticing party must wait ten days before disclosing any such Designated Material to the consultant or expert. *Id*., ¶ 5(e). If the opposing party lodges an objection within that ten-day notice period and the parties cannot resolve the objection, the objecting party must seek a protective order from the Court with respect to the proposed disclosure. *Id.* "The objecting Party shall have the burden of proving the need for a protective order." *Id.*

### B.     Dr. Kiškis Is A Uniquely And Highly Qualified Attorney And Professor Of Law

Luminati initiated this lawsuit asserting patent-infringement, misappropriation, false advertising, and tortious-interference claims against Teso, a Lithuania-based company. This is

Teso's first U.S. lawsuit. *See* Declaration of Dr. Mindaugas Kiškis ("Kiškis Decl."), ¶ 9. Given the complex factual and legal issues presented by the lawsuit and its pendency in a foreign venue and language for Teso, Teso seeks to consult with an expert from its native country who speaks Lithuanian, understands both U.S. and Lithuanian intellectual-property law, understands the technology-at-issue, and appreciates the business and economic implications this litigation may have on Teso.

Dr. Kiškis' background uniquely qualifies him to provide advice to Teso in connection with this case. Dr. Kiškis has a Master of Law degree from Vilnius University, a Doctor of Philosophy degree in Social Sciences from Mykolas Romeris University, and a Master of Business Administration degree from Vytautas Magnus University. *Id.*, ¶ 2.

Dr. Kiškis is a full-time, tenured Professor of Law at Mykolas Romeris University (one of Lithuania's leading universities) in Vilnius, Lithuania and has been a faculty member there for over twenty years. *Id.*, ¶ 3. He has conducted research in the fields of technology and intellectual property, and is a frequent speaker on such issues. *Id*. Dr. Kiškis also has basic computer programming experience and can review and analyze source code. *Id*.

Dr. Kiškis has had numerous fellowships and visiting professorships with large universities worldwide, including the Markle Fellowship at the Centre for Socio-Legal Studies, Wolfson College, Oxford University (2002-2003); the Fulbright Scholar Fellowship at the Sandra Day O'Connor College of Law, Arizona State University (2007-2008); and the Fulbright Visiting Scholar at the College of Business, Montana State University (2017-2018). *Id.*, ¶ 4. In connection with the Fulbright Visiting Scholar grant (a grant sponsored by the U.S. Department of State), Dr. Kiškis received a U.S. social security number, and he maintains a mailing address in Wisconsin and a U.S. telephone. *Id*. In addition, Dr. Kiškis has regularly traveled to the United

States in connection with his work,[1] and he intends to do so in the future, including with respect to an academic visit scheduled for early 2020 under his ongoing research collaboration (funded by the Lithuanian Science Council) with the Sandra Day O'Connor College of Law, Arizona State University. *Id.*, ¶ 5.

Dr. Kiškis has been licensed to practice law in the Republic of Lithuania for over twenty years (first as a Candidate to the Bar from 1998-2003 and then, since 2003, as a Member of the Bar). *Id.*, ¶ 6. In addition to tenured professorship, Dr. Kiškis also practices law at the INVENT law firm where he focuses on intellectual-property law, including intellectual-property litigation, legislation and regulation. *Id.*

Dr. Kiškis is familiar with the technology-at-issue, as well as the Teso products and services accused of infringement. *Id.*, ¶ 8. While Teso has worked with Dr. Kiškis before, Teso has not retained Dr. Kiškis in connection with the litigations currently pending between the parties in Lithuania—and he agrees that, while he is qualified outside consultant for this case, he will not act as counsel of record in such proceedings. *Id.*, ¶ 9.[2] Dr. Kiškis is not one of Teso's competitive decisionmakers. For example, he is not an employee of Teso, does not hold any ownership of Teso, exercises no control over Teso, does not sit on Teso's corporate management bodies, and

---

[1] In connection with his teaching and research, Dr. Kiškis lived in Arizona for eleven months and Montana for seven months. Kiškis Decl., ¶ 5. Since 2005, he has traveled to the U.S. approximately fourteen times. *Id.*

[2] Dr. Kiškis previously represented Teso in an *ex parte* Lithuanian application seeking to obtain pre-suit evidence concerning Luminati's misappropriation of Teso's trade secrets relating to Teso's products. Kiškis Decl. ¶ 8. The Lithuanian court denied that application, without ordering the production of evidence, in October 2018, and the denial was upheld on appeal in December 2018. *Id.* As noted above, Dr. Kiškis is not counsel of record in the currently pending Lithuanian proceedings and agrees not to serve as counsel of record in connection with those proceedings.

has no responsibility for, among other things, introducing new Teso products into the market, pricing the products, or doing business deals. *Id.*, ¶ 10.

Given his qualifications, knowledge of Teso's technology, and ability to speak Lithuanian, Dr. Kiškis has been retained by Teso to consult with Teso (and Teso's U.S. counsel) in the current litigation. *Id.*, ¶ 11. Teso seeks to benefit from Dr. Kiškis' expertise with respect to technical and business issues, as well as overall legal strategy and advice. Dr. Kiškis is also uniquely qualified to provide advice to Teso regarding the similarities and differences between the U.S. and Lithuanian legal systems, and to assist Teso in conducting its defense and complying with this Court's rules and requirements.

To date, Dr. Kiškis has not received or reviewed any Protected Material or Designated Material disclosed in this case given Luminati's stated objections. *Id.*, ¶ 13.

    **C.**    **Teso's Disclosure Of Dr. Kiškis And Luminati's Objection**

On May 15, 2019, Teso formally disclosed Dr. Kiškis as an "outside consultant" as required by the Protective Order—Teso served Luminati with a signed Undertaking, dated May 14, 2109, and a copy of Dr. Kiškis' *curriculum vitae*. Mot., Wielkopolski Decl., ¶ 7. Luminati subsequently objected to the disclosure of Dr. Kiškis on grounds that (i) the Court may be limited in its ability to enforce the Protective Order against Dr. Kiškis in the event of a violation because he is a foreign national located outside the United States; and (ii) Luminati is concerned that Dr. Kiškis may represent Teso as counsel in connection with the parties' ongoing litigation in Lithuania. *See id.*, Exs. C, F. Teso reassured Luminati that Dr. Kiškis signed the Undertaking, thereby

agreeing to be bound by the terms of the Protective Order, and that he is not counsel of record in, or otherwise involved with, the parties' ongoing litigation in Lithuania.³ *Id.*, Ex. G.

Luminati's Motion followed.

## III. IT IS LUMINATI'S BURDEN TO SHOW GOOD CAUSE TO DISQUALIFY DR. KIŠKIS

"Federal Rule of Civil Procedure 26(c) allows courts, for good cause, to enter a protective order to limit production of, in addition to who can view, trade secrets or other confidential research, development, or commercial information." *ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Ops., Inc.*, 251 F.R.D. 238, 246 (E.D. Tex. 2008); *see also* Fed. R. Civ. P. 26(c)(1)(G). To show good cause, the producing party must not only establish that the information is confidential, but also "demonstrate that its disclosure would cause an identifiable, significant harm." *Stone Connection, Inc. v. Simpson*, No. 4:07-CV-431, 2008 WL 1927033, at *1 (E.D. Tex. Apr. 28, 2008); *see also* 8 C. Wright & A. Miller, Federal Practice And Procedure § 2043 (2010) ("Besides showing that the information qualifies for protection, the moving party must also show good cause for restricting dissemination on the ground that it would be harmed by its disclosure.").

---

³ Luminati intimates that Teso attempted to hide the pending Lithuanian proceedings when disclosing Dr. Kiškis as a consultant. Mot at. 1-2. This is not correct. In fact, on the very same day of the parties' meet and confer (May 9, 2019), Teso e-mailed Luminati's President (Ofer Vilenski) and owner (EMK Capital) advising them of the Lithuanian district-court proceeding, and thereafter (on May 15, 2019) formally disclosed Dr. Kiškis as an outside consultant by providing his CV and Protective Order Undertaking. *See* Ex. 1 (May 9, 2019 e-mail from J. Jarusevicius to Luminati advising of Lithuanian district-court proceeding); Mot., Ex. F at 3 (May 15, 2019 disclosure of Dr. Kiškis); *see also* Ex. 2 (May 17, 2019 e-mail from J. Jarusevicius to Luminati advising of the Lithuanian regional-court proceeding). If Teso was trying to qualify Dr. Kiškis as an outside consultant while hiding the pending Lithuanian proceedings from Luminati, telling Luminati of the Lithuanian proceedings about a week *before* providing Dr. Kiškis' CV and Undertaking would be an odd way of doing so.

"The requirement of a showing of good cause to support the issuance of a protective order indicates that [t]he burden is upon the movant to show the necessity of its issuance, which contemplates *a particular and specific demonstration of fact* as distinguished from stereotyped and conclusory statements." *Stone Connection*, 2008 WL 1927033, at *1 (citations and quotations omitted) (emphasis added); *see also ReedHycalog UK*, 251 F.R.D. at 246 ("The party that objects bears the burden to establish that the objectionable individual should not have access to the producing party's confidential information."). The Protective Order here similarly places the burden on the objecting party (here, Luminati). ECF No. 39, ¶ 5(e).

## IV. THE COURT SHOULD NOT DISQUALIFY DR. KIŠKIS FROM SERVING AS A CONSULTANT

No good cause exists to disqualify Dr. Kiškis from serving as a consultant. As discussed below, Luminati's stated concerns are unfounded and lack legal justification. As such, Luminati has not met its burden to show an entitlement to a protective order preventing Teso from disclosing Designated Material or Protected Material to Dr. Kiškis.

### A. Dr. Kiškis Is Not Representing, And Will Not Represent, Teso In The Currently Pending Lithuanian Proceedings Against Luminati

Luminati's primary objection to Dr. Kiškis acting as a consultant is based on its belief that Dr. Kiškis is assisting or intends to assist Teso in legal matters other than this case, and that Dr. Kiškis will use Luminati's confidential materials in connection with those unrelated matters. Mot. at 4-5. But Dr. Kiškis is not representing, and agrees not to represent, Teso as counsel of record in the parties' pending litigation in Lithuania. Kiškis Decl. ¶ 9.[4]

---

[4] Paragraphs 5(c) and 9 of the Protective Order allow disclosure of information designated "Confidential" and "Restricted – Attorneys' Eyes Only" to the parties' "in-house counsel." Thus, Luminati's objection to allowing these same materials to be disclosed to Dr. Kiškis, an outside consultant, is puzzling, as it stands to reason that an outside consultant would be less incentivized to violate a protective order than a party's employee.

7

Further, by signing the Undertaking and as stated in his declaration, Dr. Kiškis has carefully reviewed the Protective Order and agrees to be bound by the terms of the Protective Order. *Id.*, ¶ 12. As such, Dr. Kiškis has agreed not to use any Protected Material or Designated Material produced in this litigation in connection with matters pending overseas. *Id.*, ¶ 14. As a Member of the Bar of the Republic of Lithuania since 2003, Dr. Kiškis is bound by the Code of Ethics of the Members of Lithuanian Bar and takes his obligations seriously. *Id.*, ¶ 7. Since earning his Master of Law, Dr. Kiškis has not been sanctioned by a court, had license revoked or suspended, or had disciplinary action taken against him. *Id*. If permitted to serve as a consultant in this case, Dr. Kiškis will strictly abide by the terms of the Protective Order. *Id.*, ¶ 12.

Luminati presents no evidence casting doubt on Dr. Kiškis' veracity. As such, Luminati has not come close to meeting its burden to showing that Dr. Kiškis would use Protected Material or Designated Material produced in this litigation for an improper purpose.

    **B.    Dr. Kiškis' Lithuanian Residency Is Not A Basis To Disqualify Him Under The Protective Order**

Equally as unavailing is Luminati's argument that, because Dr. Kiškis resides outside of the U.S., this Court and Luminati have no recourse to hold Dr. Kiškis accountable for a violation of the Protective Order.[5] Mot. at 6.

        1.    <u>There is no justification to preclude non-U.S. residents from qualifying under the Protective Order</u>

Prohibiting non-U.S. residents from serving as consultants or experts in litigation pending in the United States is a drastic and harsh measure without any legal or practical justification.

---

[5] It is ironic that Luminati, a foreign company, would make this argument, especially where its own non-U.S. based employees qualify under the Protective Order to review Teso's confidential materials. *See* ECF No. 39, Protective Order, ¶ 5(c)-(d) (in-house counsel and up to three designated representatives of each party may access certain confidential materials under the Protective Order).

Indeed, Luminati offers no authority suggesting such a ban has been adopted by any court anywhere in the U.S. In this District alone, the number of foreign litigants, experts, and consultants is vast. To deny litigants, especially foreign litigants, the opportunity to use non-U.S. based consultants and experts of their choice would result in extreme and unfair prejudice to the preparation of cases.

Such prejudice would be evident in the instant case. Here, Israel-based Luminati chose to sue Lithuania-based Teso in the United States. Teso is unfamiliar with U.S. litigation and has a small in-house legal department. Kiškis Decl. ¶ 9. For this reason, Teso seeks a consultant who possesses the requisite legal, technical, and business knowledge qualified under the Protective Order to assist with this case. Further, Dr. Kiškis is particularly qualified to assist, as he understands not only Lithuanian intellectual-property law, but also U.S. intellectual-property law. This, combined with ability to speak English and Lithuanian, places him in a unique position to advise Teso with respect to this case—i.e., he can ensure that communications between Teso's U.S. counsel and its Lithuanian legal department do not become "lost in translation" and otherwise assist Teso with the defense of this case and understanding this Court's rules and procedures.

Dr. Kiškis' expertise cannot be duplicated by others located in the United States who, however skilled, likely do not have (i) expertise in Lithuanian intellectual-property law, business and economics, (ii) familiarity with the technology-at-issue and the products and services accused of infringement, (iii) the ability to analyze technical documents and source code, (iv) an understanding of the implications this lawsuit may have on a Lithuanian company, and (v) the ability to speak fluently in Teso's native language (Lithuanian). Given these circumstances, Luminati's objection to Dr. Kiškis is not well founded. *See, e.g.*, *Reedhycalog UK*, 251 F.R.D. at

246 (allowing party's consultant to view confidential documents where there was only a limited number of experts in field); *English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F. Supp. 1498, 1505 (D. Colo. 1993) (courts should ensure "that parties have access to expert witnesses who possess specialized knowledge"). Simply put, the Court should allow Teso and Teso's outside counsel the opportunity to meaningfully consult with someone with Dr. Kiškis' unique qualifications and expertise.

        2.    <u>This Court and Luminati have ample legal and practical recourse in the unlikely event that Dr. Kiškis violates the Protective Order</u>

In the unlikely event that Dr. Kiškis violates the Protective Order, this Court and Luminati have both the legal and practical ability to hold Dr. Kiškis accountable. For example, by signing the Undertaking, Dr. Kiškis declared under penalty of perjury that he would comply with all the provisions of the Protective Order. Mot., Ex. E, ¶ 3. The Undertaking also states that Dr. Kiškis voluntarily consents to the jurisdiction of this Court for the purpose of enforcement of the Protective Order. *Id.*, ¶ 5. Thus, this Court has jurisdiction over Dr. Kiškis to hold him in contempt of court for any violation of the Protective Order.

The Lithuanian judicial system could also be brought to bear should the situation warrant it. "The U.S. and Lithuania share a history as valued Allies and strong partners."[6] As part of this strong partnership, and even without Dr. Kiškis' consent to the jurisdiction of this Court, the United States and Lithuania have long been parties to treaties requiring cooperation between the

---

[6] *See* https://www.state.gov/u-s-relations-with-lithuania/ (U.S.-Lithuania Relations).

two countries' legal systems.[7] Lithuania is a member of the European Union (as well as NATO)[8] and is bound by the Mutual Legal Assistance Agreement with the European Union and the United States of America.[9]

The practical consequences of Dr. Kiškis violating the Protective Order would also be severe. For example, as a licensed attorney in Lithuania, Dr. Kiškis is bound by the Code of Ethics of the Members of Lithuanian Bar. Kiškis Decl., ¶ 7. The Code provides, among other things, that:

- "An advocate is prohibited from engaging in any actions or conduct, which are incompatible with honesty, other generally accepted norms of ethics and morality and/or which undermine the society's confidence in advocates, harm the reputation of the Lithuanian Bar Association or degrade the advocate's professional title."

- "An advocate shall be unconditionally prohibited from advising, representing, defending or acting on behalf of or in the interests of another person, when relevant legal acts provide for such a restriction on legal services due to a conflict of interest."

---

[7] *See, e.g.*, Treaty Between the Government of the United States of America and the Government of the Republic of Lithuania on Mutual Legal Assistance in Criminal Matters (1998), *available at* https://www.congress.gov/105/cdoc/tdoc41/CDOC-105tdoc41.pdf; Extradition Treaty Between the Government of the United States of America and the Government of the Republic of Lithuania (2001), *available at* https://www.congress.gov/107/cdoc/tdoc4/CDOC-107tdoc4.pdf.

[8] *See* https://www.state.gov/u-s-relations-with-lithuania/ ("The U.S. welcomed Lithuania's accession to the North Atlantic Treaty Organization (NATO) and the European Union (EU) in 2004. As a NATO Ally and EU member, Lithuania has become a strong, effective partner committed to democratic principles and values. The country is a strong supporter of U.S. objectives in the area of democracy promotion and has helped the people of other young European nations develop and strengthen civil institutions.").

[9] *See* https://www.congress.gov/109/cdoc/tdoc13/CDOC-109tdoc13.pdf; *see also* Mutual Legal Assistance Treaties with the European Union, Germany, and Japan, 98 Am. J. Int'l L. 596, 596 (2004) ("Both parties are obligated to assist in the investigation, prosecution, and suppression of offenses in all forms of proceedings (criminal, civil, or administrative). Among other things, the treaties address the ability of one government to summon witnesses located in the other government's territory, to compel the production of documents and other real evidence, to issue search warrants, and to serve process.").

> - "In relationships with state and public institutions, authorities and persons or in performance of his professional duties in court, other institutions and authorities an advocate must act respectfully, correctly and constructively, according to established standards of conduct and requirements and respecting other persons' rights."

*See* Code of Ethics for Advocates, *available at* http://www.advokatura.lt/en/about-the-bar/code-of-ethics-ksah.html. "Disciplinary proceedings can be initiated against an advocate for violations of requirements of this Code and a disciplinary penalty can be imposed on him." *Id.*

Dr. Kiškis takes his obligations seriously as demonstrated by the fact that he has never been sanctioned, suspended or disbarred in his twenty plus years as a licensed attorney. *Id.*, ¶ 7. Should Dr. Kiškis violate the terms of the Protective Order, he would also violate the Code of Ethics that apply to all Lithuania-licensed attorneys which could lead to his possible suspension or disbarment. *Id.*, ¶¶ 15-16. Any violation of the Protective Order could also jeopardize his position on the faculty of Mykolas Romeris University. *Id.*, ¶ 16. This, of course, would be in addition to the reputational injury that Dr. Kiškis would suffer from any protective-order violation.[10] Dr. Kiškis has no reason to risk his law license, his employment with a leading Lithuanian university, and his reputation by violating the terms of the Protective Order.

Finally, Luminati ignores the fact the Court can impose sanctions *on Teso* for any violations committed by its consultants or experts. Federal Rule of Civil Procedure 37 authorizes sanctions for failure to comply with discovery orders, such as protective orders. "In addition to Rule 37, this court also has inherent powers to enter sanctions." *Allergan, Inc. v. Sandoz Inc.*, No. 2:09-CV-182, 2011 WL 2563238, at *2 (E.D. Tex. June 28, 2011). Thus, in the event of a

---

[10] For example, Dr. Kiškis is presently consulting with U.S. attorneys in unrelated matters and regularly speaks at U.S. universities, including with respect to his upcoming academic visit in early 2020. Kiškis Decl., ¶ 5. He has also received a Fulbright Scholar grant from the U.S. Government. *Id.*, ¶ 4. It does not strain credulity to believe that such U.S. opportunities (present and future) would evaporate were the Court to find that Dr. Kiškis violated the Protective Order.

violation of the Protective Order by a party or its consultant, the Court can impose an array of sanctions, including barring the introduction of certain evidence, deeming certain facts as established, or rendering judgment by default. *Id.* The Court's ability to sanction Teso provides Luminati with a sufficient remedy in the event of a breach of the Protective Order, not to mention tremendous incentive for Teso to ensure that Dr. Kiškis complies with the Protective Order.

### C. Luminati's Non-Patent Allegations Provide No Basis To Disqualify Dr. Kiškis

As a final basis for its objection to Dr. Kiškis, Luminati points to its "computer system and misappropriation" allegations. Mot. at 1, 6. Luminati further argues that it "has evidence that Teso has gained access to Luminati's client lists and used this list to contact Luminati's customers." *Id.* at 6. These allegations and "evidence" provide no basis to disqualify Dr. Kiškis, for two independent reasons. First, while Teso vigorously disputes Luminati's non-patent allegations, this is not the proper time to resolve these claims. Second, Luminati does not assert that Dr. Kiškis had any involvement with the purported "unauthorized access" and "misappropriation." A defendant in a "computer system and misappropriation" case is entitled to qualify consultants under the governing protective order, and Luminati provides no basis to impose a contrary rule in this case.

\* \* \* \* \*

In sum, Luminati has provided no authority or justification to prohibit Teso from using Dr. Kiškis as a consultant in this case. The mere fact that Dr. Kiškis resides outside the United States is of no consequence as both the Court and Luminati have remedies available to hold Dr. Kiškis and Teso accountable in the unlikely event of a violation of the Protective Order. Finally, if the Court found any merit with respect to Luminati's "concerns" (and it should not), Teso suggests that the Court simply impose heightened restrictions on Dr. Kiškis' access to Luminati's

materials (e.g., allowing Dr. Kiškis to review Luminati's source code while physically present in the United States).[11]

## V. CONCLUSION

For these reasons, the Court should deny the Motion and qualify Dr. Kiškis as a consultant under the Protective Order.

---

[11] Luminati objects to the disclosure of Designated Material and Protected Material to Dr. Kiškis under Paragraph 5(a) of the Protective Order which allows disclosure to "outside counsel of record in this Action or Related Proceedings for the Parties." Teso concede for purposes of this Motion that Dr. Kiškis does not qualify under Paragraph 5(a) of the Protective Order, because he is not licensed to practice law in the U.S. Instead, Teso seeks to qualify Dr. Kiškis as an "outside consultant" pursuant to Paragraph 5(e) of the Protective Order.

Dated:  June 13, 2019                    Respectfully submitted,

                                          */s/ Michael C. Smith*

                              MICHAEL C. SMITH
                               Texas State Bar No. 18650410
                               michaelsmith@siebman.com
                              **SIEBMAN, FORREST,**
                               **BURG & SMITH LLP**
                               113 East Austin Street
                               Marshall, Texas 75671
                               Telephone: (903) 938-8900
                               Telecopier: (972) 767-4620

                               PAUL S. TULLY, PH.D.
                                tully@mbhb.com
                               KURT W. ROHDE
                                rohdek@mbhb.com
                               ANDREA K. ORTH
                                orth@mbhb.com
                               **MCDONNELL BOEHNEN**
                               **HULBERT & BERGHOFF, LLP**
                               300 South Wacker Drive
                               Chicago, Illinois 60606
                               Telephone: (312) 913-0001
                               Telecopier: (312) 913-0002

                               STEVEN CALLAHAN
                                Texas State Bar No. 24053122
                                scallahan@ccrglaw.com
                               **CHARHON CALLAHAN**
                               **ROBSON & GARZA, PLLC**
                               3333 Lee Parkway, Suite 460
                               Dallas, Texas 75219
                               Telephone: (214) 521-6400
                               Telecopier: (214) 764-8392

                               *Counsel for Defendant UAB Teso LT*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on June 13, 2019. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

*/s/ Michael Smith*
MICHAEL C. SMITH