**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LUMINATI NETWORKS LTD.<br><br>       Plaintiff,<br><br>    v.<br><br>UAB TESONET,<br><br>       Defendants. | Case No. 2:18-cv-299-JRG |

**LUMINATI'S REPLY CLAIM CONSTRUCTION BRIEF
<u>(LOCAL PATENT RULE 4-5(c))</u>**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE PREAMBLE OF '044 PATENT CLAIM 81 IS NOT LIMITING | 1 |
| III. | MOST DISPUTED CLAIM TERMS SHOULD BE GIVEN THEIR PLAIN AND ORDINARY MEANING – IT WOULD BE ERROR TO READ THE SPECIFICATION INTO THE CLAIMS | 1 |
| IV. | TERMS THAT SHOULD BE CONSTRUED | 5 |
| V. | THE CHALLENGED TERMS ARE DEFINITE | 6 |
| | A. Defendant Does Not Dispute that the from First Device, Second Device, First Server, and Second Server Terms Are Definite, But It Erroneously Attempts to Assert Indefiniteness By Improperly Limiting Claims To One Embodiment | 6 |
| | B. There Is No Requirement that the Claims Include Steps Regarding "From a Second Server," But a POSA Would Understand the Second Device As Receiving the Content from the Second Server | 7 |
| | C. The Term "By a First Device" Is Not Limited By the Embodiment of Figure 5B | 8 |
| | D. The Claims Clearly Indicate that the First Server Is "Used" as Part of at Least Steps (a)-(c) | 8 |
| | E. The term "Via a Second Device" | 9 |
| | F. The Term "Past Activities" Is Definite Consistent With the Specification | 9 |
| | G. The Term "the timing of the event" Is Definite Consistent With the Specification | 9 |
| | H. The Terms "Partitioning the Content" and "Constructing the Content" Are Definite | 10 |
| VI. | NEWLY ADDED TERMS AND CLAIMS | 10 |
| | A. Claim 108 and Preamble | 10 |
| | B. Claim 108 and Indefiniteness | 12 |
| | C. '044 Claim 81: "Sending a first request" | 12 |
| VII. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

*Cases*

*Acceleration Bay, LLC v. Activision Blizzard, Inc*., 908 F.3d 765 (Fed. Cir. 2018)...................... 11

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341 (Fed. Cir. 2001) ......................................................................................................................... 2

*Fundamental Innovation Sys. Int'l LLC v. Samsung Elecs. Co.,* No. 2:17-cv-145-JRG-RSP, 2018 U.S. Dist. LEXIS 15541 (E.D. Tex. Jan. 31, 2018) ................................................... 11

*GE Lighting Sols., LLC v. AgiLight, Inc.,* 750 F.3d 1304 (Fed. Cir. 2014) ............................... 2, 6

*Huawei Techs. Co. v. T-Mobile US, Inc*., No. 2:16-CV-00057-JRG-RSP, 2017 U.S. Dist. LEXIS 96097 (E.D. Tex. June 21, 2017) ........................................................................................ 2

*In re Miller*, 441 F .2d 689 (C.C.P.A. 1971)...................................................................... 5, 6, 7, 9

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ........................................... 2, 7

*Searfoss v. Pioneer Consol. Corp.,* 374 F.3d 1142 (Fed. Cir. 2004) .............................................. 4

*TomTom Inc. v. Adolph*, 790 F.3d 1315 (Fed. Cir. 2015).................................................. 1, 10, 11

*TQP Dev., LLC v. Wells Fargo & Co.*, 2:12-cv-61, 2013 U.S. Dist. LEXIS 169259 (E.D. Tex Dec. 2, 2013) .................................................................................................................. 7, 10

*Traxcell Techs., LLC v. Huawei Techs. USA, Inc*., No. 2:17-cv-00042-RWS-RSP, 2019 U.S. Dist. LEXIS 2130 (E.D. Tex. Jan. 4, 2019) ............................................................................ 11

*Traxxas LP v. Hobby Prods. Int'l,* No. 2:14-CV-945-JRG-RSP, 2015 U.S. Dist. LEXIS 114148 (E.D. Tex. Aug. 28, 2015)........................................................................................................ 6

*Trs. of Columbia Univ. in City of New York v. Symantec Corp*., 811 F.3d 1359 (Fed. Cir. 2016)12

*Uniloc USA Inc. v. Microsoft Corp.,* 632 F.3d 1292 (Fed. Cir. 2011).................................. 8, 9, 12

**I.      INTRODUCTION**

Defendant identified 28 terms for construction, when in fact the claim terms use plain language that is readily understood without such construction, and when it is clear that Defendant is attempting to improperly limit claim terms to specific examples set forth in the specification when the law clearly requires such terms to be given their full breadth. Defendant also improperly argues that claims should be indefinite that the Patent and Trademark Office found definite with generic, unsupported, and untimely conclusory testimony that cannot support indefiniteness. As Luminati's expert Dr. Rhyne set forth in his timely declaration, the claim terms provide appropriate definiteness to one of skill in the art.

**II.     THE PREAMBLE OF '044 PATENT CLAIM 81 IS NOT LIMITING**

Defendant asserts generally that the preamble of '044 patent claim 81 is "limiting." The core of the dispute here is that a preamble is generally not limiting, and when it is limiting it may be limiting *only to the extent necessary* to define a structurally complete invention. *See TomTom Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015) (reversing district court for converting entire preamble into a limitation when only part was required to provide necessary structure). Here, the antecedent bases of terms are not applicable because they don't add structure or definition. To the extent they do not appear in the body, that is evidence that they are *not* limiting, not that those terms must be added to the body of the claims. The other arguments discussed regarding Claim 108, *infra*, apply equally to Claim 81.

**III.    MOST DISPUTED CLAIM TERMS SHOULD BE GIVEN THEIR PLAIN AND ORDINARY MEANING – IT WOULD BE ERROR TO READ THE SPECIFICATION INTO THE CLAIMS**

Defendant's proposals run afoul of basic claim construction principles. For example, unless there is an express disclaimer or definition, claim terms are not limited to the embodiments in the specification. *See GE Lighting Sols., LLC v. AgiLight, Inc.,* 750 F.3d 1304, 1309 (Fed. Cir.

2014). Yet that is exactly what Defendant has asked the Court to do repeatedly by defining terms as limited to just some examples of the terms set forth in the Asserted Patents. Further, claim terms whose meaning is commonly understood and readily apparent need not be construed. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc); *see also, e.g., Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341, 1349 (Fed. Cir. 2001) ("melting"). Also, claim construction that is not helpful to the jury should not be adopted. *See, e.g., Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00057-JRG-RSP, 2017 U.S. Dist. LEXIS 96097, at *33 (E.D. Tex. June 21, 2017).

**Device** (and **Client Device**): For the first time in its responsive brief, Defendant asserts a new construction and abandons its prior proposal. But now the construction says in ten words simply that a device is a device and not something that is merely hypothetical. Resp. at 10. A jury would understand the term "device" actually means a device without the unnecessary clarification. Brf, at 10. Defendant also asserts a new, unnecessary construction of "a device signed in as a client, and which uses tunnel, agent, or peer devices serving as intermediate devices to fetch content in the method," again abandoning its prior proposal. This new construction is clearly wrong as well. For example, claim 15 expressly states "wherein each of the devices in the group is a client device." Resp. at 20. Clearly, all the group devices must also be client devices. The language relied upon by Defendant actually refers to devices being "capable of assuming two or more roles, either at different times or simultaneously." '866 Patent at 125: 41-42. Defendant asks the Court to improperly construe the claims so as to require all the devices in the group to be receiving content slices, rather than just being capable of receiving content slices. Resp. at 20.

**Identifier** (also **Content Identifier**, **Group Device Identifier**, **Content Slice Identifier**): Defendant again takes a term and narrows it to only one type of identifier (here an IP address).

Resp. at 11-13, 23. The patentee used the term "IP address" in the patent and if the patentee wanted to limit the claim to IP addresses it would have used that term, but it did not. "Identifier" should receive its plain and ordinary meaning. Brf., at 11-13. Since "identifier" just identifies something, and there is no basis to restrict that, the same applies to the other terms that include "identifier." None requires special construction. Brf, at 14-15, 21, 22. Identifying something is not the same as identifying it by its Internet address. Existing in an environment does not mean you have to identify it in a particular way. Property exists on a street, but need not be identified by a street address. Its plat map number in the recorder's office could also, for example, identify it.

**Content** (and **Content Slice**): Defendant cites a phrase in the specification that belies its own position by not defining "content" but simply stating that it "may include" various items. Resp. at 10. But Defendant attempts to restrict the definition to the list of types of items that may be included. That improperly imports the specification into the claims. "Content" is a readily understood term without need of further construction. Brf., at 13-14.

Defendant repeats the error with "content slice," by taking a list of examples and attempts to limit the term to just those examples. That is inappropriate. Resp. 16-17. The specification states in a non-limiting way, for example, "The content may be composed of bits, nibbles, bytes, characters, words, or strings, and the partitioning may be based on bit, nibble, byte, multi-byte, number, character, word, or string level, or may be composed of files, or programs, and the partitioning may be based on file or program level." '044 Patent at 56:30-34. There is no requirement that a particular partitioning scheme be adopted. Resp. at 16-17. There is also no requirement that the above described files or programs be in a particular order, nor that the "device doing the partitioning" to "already possess the content in advance of the partitioning," because as described in the specification, such content may already be divisible into recognizable subunits

3

such as the "file or program level." Resp. at 16-17. Just as a request for content can be based on the content identifier for a group of files, so can a request for a content slice be based on a content slice identifier for a specific file.

**Simultaneous** and **Concurrently**: The Asserted Patent use these two terms synonymously, both to mean occurring at least in part at the same time and neither requiring the overlap to be entire. Resp. at 25-28. For example, the '044 patent states that an operation is performed "concurrently. In such a case of simultaneous activation…" ('044, 73:8-11). That is direct correlation that the two words are being used synonymously,[1] Luminati cited extensive case law that this means they have the same meaning, and Defendant has no response. *See, e.g., Searfoss v. Pioneer Consol. Corp.,* 374 F.3d 1142, 1150 (Fed. Cir. 2004) & other cases cited at Brf., at 16-18. Defendant relies on a lay dictionary definition, but the dictionary defines "simultaneous" as "concurrent" and vice-versa, which supports Luminati's position. Resp. at 25. In contrast, the specification never limits "simultaneous" as limited to having exactly the same start and end times—it does the opposite. *See, e.g.,* '044 pat., 73:1-20; 5:48-67; 6:34-62; 24:19-33; 35:47-36:7; 74:53-62; 105:44-106:6; 122:26-38; 124:3-25. Defendants claim differentiation argument is also wrong; "concurrently" is never a further modification of a claim that already requires "simultaneous" or vice-versa, so claim differentiation does not apply. *See also* Resp., at 27-28.

---

[1] Defendant argues that "simultaneous activation" means that the start time is identical, but that is not how the phrase is used in the patent. The phrase in the patent refers to "simultaneous activation" as specifically have two different start and/or end times: "In such a case of simultaneous activation of both schemes, upon receiving the first piece of data by one of the schemes, and if the other scheme is still active, that other scheme is terminated. Alternatively or in addition, upon receiving the last piece by one of the schemes, if the other scheme is still active, it is terminated." '044 pat., 73:11-14. The "simultaneous activation" is thus an activation period, not an activation event at a singular point in time, and the patent refers to two activation periods as not being entirely coextensive but merely overlapping in part, which contradicts Defendant's proposed definition of that term.

**The timing of an event**: Defendant's alternative construction of "timing of an event" improperly restricts this term to "time of sign in of a tunnel device, time of last usage of a tunnel device, or time of accumulated use of a tunnel device" based upon a single example from the specification and its own misreading of Dr. Rhyne's Declaration. Resp., at 24. As made clear in Dr. Rhyne's declaration, Fig. 5b is but one example from the specification, which happens to use the term "tunnel device." Rhyne Dec., ¶ 9. But there is nothing in the specification or the claim language itself to limit "timing of an event" to the three specific tunnel device events proposed by Defendant. Br., at 20.

## IV. TERMS THAT SHOULD BE CONSTRUED

**Past Activities**: A POSA would understand "past activities" to mean "past actions or performance." Br. at 19. For example, "the second device may be selected based on past activities, such as based on the timing of an event." 53:65-67. "Past activities" would also be understood to overlap with, but not be coextensive with "timing of an event." For example, the '044 specification distinguishes between the timing of an event and an alternative method of selection based on the lack of activity at 91:38-44." Rhyne Dec., ¶ 13. As shown in Fig. 5A, past activity can include the status of tunnel devices being online, offline, and congested. *Id*. at ¶ 12. While the term can clearly include lack of activity, such as when a device lacks traffic, that does not mean the term is indefinite. Resp. at 23-24. "[B]readth of a claim is not to be equated with indefiniteness…." *In re Miller*, 441 F .2d 689, 693 (C.C.P.A. 1971).

**Part of the content is included in two or more content slices**: the claim itself only states that part of the content is included in two or more content slices, it does not add any other requirements. Thus, the correct construction is "two or more slices including at least an overlapping part of the content" about the structure of the "part of the content." Brf. at 25-26.

5

## V. THE CHALLENGED TERMS ARE DEFINITE

The definiteness requirement of 35 U.S.C. § 112 ¶ 2 requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inv. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). Defendant confuses claim breadth with indefiniteness, but "breadth is not to be equated with indefiniteness." *In re Miller*, 441 F .2d 689, 693 (C.C.P.A. 1971);

### A. Defendant Does Not Dispute that the from First Device, Second Device, First Server, and Second Server Terms Are Definite, But It Erroneously Attempts to Assert Indefiniteness By Improperly Limiting Claims To One Embodiment

Defendant's argument for indefiniteness is premised on reading preamble terms into the claims; since the preamble is not limiting, the indefiniteness argument also fails. Were terms in the preamble limiting, Defendant concedes that a POSA would understand what the terms "from a second server," "by a first device," "via a second device" and "using a first server" mean, which supports a conclusion that the claim is definite. *See Traxxas LP v. Hobby Prods. Int'l,* No. 2:14-CV-945-JRG-RSP, 2015 U.S. Dist. LEXIS 114148, at *8 (E.D. Tex. Aug. 28, 2015). In fact, Defendant proposed claim constructions for the first and second "device" and agrees that a "server" should be construed according to its plain and ordinary meaning.

Defendant also argues that claim 81 is indefinite because it does not include all the limitations in the embodiment illustrated by Figure 5b, but reading Figure 5b or any specific example into the claims would constitute legal error. *See GE Lighting Sols., LLC v. AgiLight, Inc.,* 750 F.3d 1304, 1309 (Fed. Cir. 2014). Dr. Rhyne presented Fig. 5b "as one example" informing a POSA of the relationship between the first and second devices and first and second servers, but he did not make the mistake of limiting claim 81 to that embodiment. Rhyne Dec., ¶ 9. Further, while independent claim 81 is broader in scope than the embodiment in Figure 5b, that does not mean that a POSA would not understand the scope of the claim with reasonable certainty.

"[B]readth is not to be equated with indefiniteness." *In re Miller*, 441 F .2d 689, 693. If the example helps inform a POSA of relationships of claim elements, that can help a POSA understand the bounds of the claim, which means the claim is definite.

Neither may Defendant rely upon Dr. Freedman's declaration[2] for the conclusory opinion that "a POSA would be unable to determine the scope of the above identified terms or how they relate to the essential element of fetching the content." Freedman Dec., ¶ 14. "[E]xpert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id.*" *TQP Dev., LLC v. Wells Fargo & Co.*, 2:12-cv-61, 2013 U.S. Dist. LEXIS 169259, *9 (E.D. Tex Dec. 2, 2013) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed Cir. 2005)). Defendant fails to provide an analysis of *why* a POSA would not understand the terms or their scope, and Dr. Rhyne indicates that a POSA would have no trouble doing so. The claims themselves provide the required fetching steps, including what identifiers and requests are sent and the receipt of content in response. There is nothing terminally unclear about that.

**B. There Is No Requirement that the Claims Include Steps Regarding "From a Second Server," But a POSA Would Understand the Second Device As Receiving the Content from the Second Server**

Defendant concedes "[o]ne can discern from the claim that a request for the first content is sent to the 'second device,' and that the first content is then received by an unnamed actor from the 'second device.'" Resp. at 7. Defendant's indefiniteness argument is based on its position that the steps of the second device requesting and receiving the content from the second server are missing. However, as discussed above, claim 81 doesn't require the second server at all. The

---

[2] Dr. Freedman's declaration is the subject of the pending motion to strike (Dkt. 70) and should be disregarded as untimely, prejudicial to Plaintiff, and conclusory.

claim also is broader than Fig. 5B.  Defendants make the error of reading an embodiment into the claim and then using that incorrect reading to argue that items not required by the claim are not detailed in the claim and therefore the claim is indefinite.  The logic is circular and fallacious.

In addition, were the preamble limiting, the plain language of the preamble states that the first content is fetched "from a second server…via a second device," so a POSA would understand that the second device requests and receives the first content from the second server. Rhyne Dec., ¶11. In fact, dependent claim 82 adds the step of "(f) sending the first content identifier to the second server using the third identifier." Defendant would read the claim so as to necessarily require divided infringement rendering the claims virtually unenforceable. *See Uniloc USA Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1309 (Fed. Cir. 2011).  The purported "multiple questions about what Claim 81 means by 'from a second server'" is a red herring. Resp. at 8. Step (e) of claim 81 clearly states "receiving the first content from the second device."

### C. The Term "By a First Device" Is Not Limited By the Embodiment of Figure 5B

Defendant errs in imposing the requirement that claim 81 include steps that are expressly limited to the "first device." Defendant also improperly tries to limit claim 81 to the embodiment of Figure 5b in order to assert that "the first device is the actor for each sending and receiving step." Resp. at 8.  As above, Dr. Rhyne provided Fig. 5 as merely one example of the relationship between the devices and servers.  Rhyne Dec., ¶ 9.  Dr. Rhyne made no such "inherent suggestion" that the first device "must be the actor for each of the sending and receiving steps."  Resp. at 8.

### D. The Claims Clearly Indicate that the First Server Is "Used" as Part of at Least Steps (a)-(c)

Defendant cannot credibly argue that "[t]he reader of claim … knows that the first server must be 'us[ed] in the fetching of content but is provided no indication of how the first server must be used to satisfy this claim." Resp. at 9.  At least three steps (a) – (c) of the claimed method

8

involve "sending the first identifier to the first server," "sending a first request to the first server," and "receiving the second identifier from the first server." Claim 81 steps (a)-(c).

### E. The term "Via a Second Device"

Claim 81 is not limited to the embodiment of Fig. 5b and there is no such requirement that claim 81 include all such limitations from this embodiment. Defendant concedes that the second request is sent to the Second Device and the first content is received from the second device. A POSA would understand that the second device requests and receives the first content from the second server." Rhyne Dec., ¶11. There is no requirement that the claims include limitations that would result in divided infringement. *See Uniloc,* at 1309.

### F. The Term "Past Activities" Is Definite Consistent With the Specification

A POSA would understand "past activities" to mean past actions or performance. Br. at 19. The existence of activity or the lack thereof, such as when a device lacks traffic, does not render the term is indefinite. Resp. at 23-24. "[B]readth is not to be equated with indefiniteness." *In re Miller*, 441 F .2d 689, 693. It is still clearly understood by a POSA as what happened in the past. Dr. Freedman's Declaration is again entirely conclusory on this point, simply repeating Defendant's argument without explanation that there are purported "conflicting teachings" in the specification. Freedman Dec., ¶ 19.

### G. The Term "the timing of the event" Is Definite Consistent With the Specification

As with "past activities," Defendant confuses breadth with indefiniteness. Resp. at 24-25. Defendant's argument that claim 100's limitation "wherein the second device is selected based on the timing of an event" may be understood to refer to an event that "could conceivably apply to everything in the world that has happened to date" is nonsensical. Resp. at 24. Defendant's expert would not support that position in his declaration, either. Instead, Dr. Rhyne offered undisputed

testimony that a POSA would understand events to be related to the second device, including, but not limited to, the signing in of a device as shown in the example of Fig. 5. Rhyne Decl. ¶ 12.

### H. The Terms "Partitioning the Content" and "Constructing the Content" Are Definite

Dr. Freedman's Declaration should be struck as untimely. *See also* Mtn. to Strike, Dkt. 80. In addition, Dr. Freedman's opinion that "partitioning the content" and "constructing the content" is vague and ambiguous is another blanket conclusion with no explanation, and it therefore carries no weight. *TQP*, 2013 U.S. Dist. LEXIS 169259, *9. Consistent with the specification, a POSA would understand "content" to be divisible into parts such as a "multiple webpages," which would be divisible into individual "webpages." *See, e.g.,* '866 pat., 53:39-48; Opening Brief at 21. A POSA would understand partitioning to merely be the division of content into partitions corresponding with its parts. Brief at 23. This is consistent with Dr. Rhyne's opinion that "'a first request including a content slice identifier'" would necessitate that the requested content had already been partitioned into content slices" meaning it was already divisible and requires no "splitting." Resp. at 17. In contrast, "constructing the content" is merely the putting together of the content from the slices. A POSA would not find these terms indefinite, and Defendant puts together no supporting intrinsic or extrinsic evidence carrying any weight. Resp. at 22-23.

## VI. NEWLY ADDED TERMS AND CLAIMS

Pursuant to the Court's Order at Docket No. 79, Defendant was permitted to add certain new matter to its brief, and the length of this brief was extended by two pages to respond.

### A. Claim 108 and Preamble

Defendant asserts generally that the preamble of '044 patent claim 108 is "limiting." The core of the dispute here is that a preamble is generally not limiting, and when it is limiting it may be limiting ***only to the extent necessary*** to define a structurally complete invention. *See TomTom*, 790 F.3d 1315, 1323. Arguments regarding claim 81 apply here as well.

Additionally, Defendant argues that several terms first appear in the preamble, arguing antecedent basis, but that is insufficient. It is false that any term introduced in the preamble and then appearing in the claim with "the" or "said" means the preamble is limiting. It *may* be limiting when the antecedent basis in the preamble not only appears but also causes a claim term to be "*defined in greater detail in the preamble*" than in the body of the claim. *See Fundamental Innovation Sys. Int'l LLC v. Samsung Elecs. Co.,* No. 2:17-cv-145-JRG-RSP, 2018 U.S. Dist. LEXIS 15541, at *36 (E.D. Tex. Jan. 31, 2018) (emphasis in original). That is not the case here. For example, claim 81 uses the term "a first content" without further defining it in the preamble. Since its appearance in the preamble adds no additional structure or definition, it is not limiting. *See Traxcell Techs., LLC v. Huawei Techs. USA, Inc.*, No. 2:17-cv-00042-RWS-RSP, 2019 U.S. Dist. LEXIS 2130, at *47 (E.D. Tex. Jan. 4, 2019) (*quoting Acceleration Bay, LLC v. Activision Blizzard, Inc.*, 908 F.3d 765, 770 (Fed. Cir. 2018)).

Defendant next asserts that two terms appear only in the preamble. As to "first device," the lack of its appearance in the body is a result of the device not being required to practice the method. To the extent it helps define a "second device" (that is a claim term in the body), that is already inherent in the term "second device" – there are two devices, but only the second is required for the claim. Were the Court to interpret the fact that the second device is not a first device as meaning that the preamble is limiting to that extent, that does not support finding the preamble limiting generally. *See TomTom,* 790 F.3d at 1323.

The term "second server" is not necessary to complete the invention of claim 81, so it is not limiting. On the contrary, inclusion of that term only in the body of dependent claims 82, 102, and 103 confirms under the doctrine of claim differentiation that it is not a limitation of independent claim 81. *See Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 811

F.3d 1359, 1370 (Fed. Cir. 2016). To the extent Defendant argue that the "second server" may be implicated implicitly but not expressly required by the body of the claim, the Federal Circuit has held that implied activity in the body of a claim does not constitute a claim limitation. *See Uniloc,* at 1309.

### B. Claim 108 and Indefiniteness

Defendant also extended its arguments regarding indefiniteness of terms in claim 81 to claim 108 to the extent they appear in both claims. For the reasons set forth above, neither claim is indefinite.

### C. '044 Claim 81: "Sending a first request"

As with other terms, Defendant wants to add matter to the claim that does not exist. The term is "sending a first request," but Defendant wants to add limitations as to what sends, what receives, and even adding items to be included in the request that are not in the claim. None of this is supported by the claim language and Defendant's only "support" is to cite the specification, thereby again attempting to read the specification into the claim. The term should instead be given its plain and ordinary meaning without importing limitations.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter its proposed constructions as set forth about, and find that none of the claims is indefinite.

Dated: July 5, 2019

Respectfully submitted,

By: */s/Robert Harkins*

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.

Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Robert Ruyak
Corrine Saylor Davis
Ronald Wielkopolski
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94702

Attorneys for Plaintiff
Luminati Networks Ltd.