**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **Luminati Networks Ltd.,** | |
| **Plaintiff,** | **Civil Action No.** |
| **v.** | **2:18-cv-00299-JRG** |
| **UAB Tesonet,** | |
| **Defendant.** | |

**UAB TESO LT'S RESPONSE TO PLAINTIFF LUMINATI'S OPPOSED MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD METACLUSTER LT, UAB AS A PARTY**

Defendant UAB Teso LT ("Teso") respectfully files this Response to Plaintiff Luminati Networks Ltd.'s ("Luminati") Opposed Motion for Leave to Amend Complaint to Add metacluster lt, UAB as a Party (the "Motion") (ECF No. 74), and respectfully shows as follows:

## I.    INTRODUCTION

Luminati seeks to amend its complaint to (i) add a new party as a defendant and (ii) change its infringement theories. With respect to the new-party amendment, Luminati's Motion comes months after the deadline to amend pleadings, is without sufficient justification, and would work significant prejudice. The Court should deny leave to amend to add a party. With respect to the infringement-theory amendment, the Court should deny leave and require Luminati to follow the relevant procedures for amending infringement contentions set forth in the Court's Patent Rules and Discovery Order.

## II.    BACKGROUND

1.    Luminati filed this case about one year ago (on July 19, 2018) against UAB

1

Tesonet. *See* ECF No. 1. There are two accused instrumentalities: (i) the "residential proxy" network or pool product ("RPN"); and (ii) the Real-Time Crawler product ("RTC"). *See* ECF No. 15, Am. Compl. ¶¶ 18-19, 22 (identifying RPN as accused product); Mot. at 3 (identifying residential proxy pool and RTC as accused products). Until late 2018, UAB Tesonet marketed and sold the accused products to its customers.

2.      In September-November 2018, UAB Tesonet underwent a corporate reorganization, whereby (i) UAB Tesonet changed its name to Teso LT, UAB and (ii) metacluster lt, UAB ("Metacluster") was created. *See* ECF No. 11, Teso's Answer, ¶ 2 (noting UAB Tesonet changed its name to Teso on Sept. 14, 2018); Mot., Ex. F (Metacluster's Articles of Association dated Nov. 15, 2018). Upon its creation, Metacluster began selling the RTC product. Teso continued to sell the RPN product.

3.      On January 30, 2019, the Court entered a Docket Control Order setting forth January 22, 2019 as the deadline to join new parties and May 8, 2019 as the deadline to file amended pleadings. *See* ECF No. 33, Docket Control Order.

4.      On March 15, 2019, Teso disclosed that "UAB Tesonet began restructuring prior to service of the Complaint" and "[b]ased on this restructuring Defendant Teso LT identifies the following related companies: . . . metacluster lt, UAB." Mot., Ex. J at 2.

5.      On **May 3, 2019**, Teso served its responses to Luminati's First Set of Interrogatories, objecting to providing information other than with respect to Teso. Mot., Ex. K at 3. Despite its objection, Teso disclosed Metacluster's role with the RTC accused instrumentality:

> [U]ntil September of 2018, named Defendant UAB Tesonet was the sole company involved in research, development and sales of the Accused Instrumentalities. In September of 2018, UAB Tesonet underwent a corporate restructuring and UAB Tesonet's name was changed to Teso LT, UAB. In addition, the corporate restructuring

2

in September of 2018 resulted in creation of the following sister companies to Teso LT, UAB: . . . metacluster lt, UAB[.] . . .

[N]amed Defendant UAB Tesonet, now known as Teso LT, UAB has developed, used, provided, sold or offered to sell the Oxylabs Residential Proxy Service and Real-Time Crawler. ***Since the restructuring in September of 2018***, Teso LT, UAB has used, provided, sold or offered to sell the OxyLabs Residential Proxy Service, and ***metacluster lt, UAB has used, provide[d], sold or offered to sell the Real-Time Crawler Residential Proxy Service***.

*Id.* at 6 (emphases added).[1]

6.      Accordingly, since at least **May 3, 2019**, Luminati has known that Metacluster is the entity selling RTC. Five days later (i.e., on **May 8, 2019**, the deadline to amend pleadings), Luminati wrote Teso advising of Luminati's intention to file a motion for leave to add Metacluster as a party to the litigation. *See* Mot., Ex. L at 8. Nevertheless, Luminati waited about two months after May 3, 2019 (i.e., until **June 28, 2019**) to file its Motion seeking leave to add Metacluster as a party. *See* ECF No. 74.

7.      During these two months, the deadline to amend pleadings and substantially complete document production passed (May 8, 2019 and June 12, 2019, respectively), and the parties served privilege log disclosures, produced source code, and served opening and responsive claim-construction briefs. *See* ECF Nos. 33, 52, 61, 70, 71.

---

[1]      Luminati intimates that Teso concealed the reorganization from Luminati. Mot. at 1. This is not correct. As noted above, Teso disclosed the reorganization in a timely manner. Further, details concerning the reorganization were publicly available as early as September 26, 2018, and Luminati was aware of the reorganization at least as early as March 1, 2019. *See* Sept. 26, 2018 Publication No. 2018-269 at 3 (disclosing details of reorganization), *available at* https://www.registrucentras.lt/jar/infleid/download.do?oid=147455; Sept. 26, 2018 news article titled, "Tesonet has changed its name, establishing 4 new companies," *available at* https://www.vz.lt/technologijos-mokslas/2018/09/26/tesonet-pakeite-pavadinima-steigia-4-naujas-imones; Mot., Ex. H at 1, 3 (Luminati seeking discovery, on March 1, 2019, concerning "the corporate restructuring of UAB Tesonet" as well as Metacluster).

8.      Both Teso and Metacluster are Lithuanian entities. Luminati served Teso via the Hague Convention about 2.5 months after the filing of its lawsuit—i.e., Luminati filed the lawsuit on July 19, 2018, and Teso agreed to a service date of October 1, 2018. ECF No. 1; Mot., Ex. D at 1 (Teso agreeing to "make an exception in this specific instance and withdraw its objection to Luminati's defective service of October 1, 2019").

9.      If the Court grants Luminati leave to amend to add Metacluster as a party, and assuming 2.5 months for service, service would occur via the Hague Convention on or around October 1, 2019—over eight months after the January 2019 deadline to add parties. Further, by that time, the *Markman* hearing will have occurred (July 31, 2019); fact discovery will have closed (September 16, 2019); opening expert reports will have been served (September 16, 2019); and the case will be on the eve of the close of expert discovery (October 21, 2019), the deadline for dispositive and *Daubert* motions (October 28, 2019), and trial (February 3, 2020). *See* ECF No. 71, Am. Docket Control Order.

10.     Luminati has two co-pending lawsuits in this District involving the two patents-in-suit against unrelated entities. *See Luminati Networks Ltd. v. BI Science Inc.*, 2:18-cv-00483-JRG (E.D. Tex.); *Luminati Networks Ltd. v. IP Ninja Ltd.*, 2:19-cv-00196-JRG (E.D. Tex.). The *BI Science* case is set for trial in June 2020, and Luminati has yet to serve the *IP Ninja* complaint. *See Bi Science*, ECF No. 59; *IP Ninja*, ECF No. 8.

## III.   ARGUMENT

### A.     Luminati Must Show Good Cause To Amend Its Complaint

It is Luminati's burden to show good cause when seeking to modify the Court's Docket Control Order to extend the deadline to amend Luminati's complaint. *See, e.g.*, *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, 360 F. Supp. 3d 541, 548 (E.D. Tex. 2018). The Court has "broad discretion to preserve the integrity and purpose of the pretrial order" when determining

whether good cause exists. *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (citations and quotations omitted).

The Court may properly consider, when ruling on a motion for leave to amend, (i) the explanation for the party's failure to timely move for leave to amend, (ii) the importance of the amendment, (iii) the potential prejudice in allowing the amendment, and (iv) the availability of a continuance to cure such prejudice. *See, e.g.*, *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 328 (5th Cir. 2016) (citing and quoting *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).

### B.   Good Cause Does Not Exist To Amend The Complaint To Add Metacluster As A Party

#### 1.   The Court Should Deny The Motion Due To Luminati's Delay

By May 3, 2019, Teso had disclosed its corporate restructuring and Metacluster's involvement with the marketing and sale of the accused RTC product. *See* Section II.5, above. Luminati thus could have sought leave to amend its complaint by the pleadings-amendment deadline of May 8, 2019. In fact, on May 8, 2019, Luminati advised Teso of Luminati's intention to move for leave to add Metacluster as a party. *See* Section II.6, above. And there was certainly no reason for Luminati to substantially delay—while important discovery and claim-construction deadlines passed—another two months to seek leave to amend. The Court should thus deny leave to amend based on Luminati's delay alone. *See, e.g.*, *Garmin Ltd. v. Tomtom, Inc.*, 06-CV-338, 2007 WL 2903843, at *5 (E.D. Tex. Oct. 3, 2007) ("The good cause standard requires the party seeking relief to show that, despite its exercise of diligence, it cannot reasonably meet the scheduling

deadlines.").[2]

2.    Teso And Metacluster Would Suffer Prejudice If The Court Allows Amendment

The prejudice to Teso and Metacluster is clear. Teso has not attempted to produce post-reorganization documents or discovery concerning Metacluster or on Metacluster's behalf,[3] given that, e.g., Metacluster is not a party and Teso objected to producing such discovery.[4] Teso also relied on Luminati's delay to conclude that Luminati would not, in fact, seek leave to add Metacluster as a party. If Metacluster is added as a party, Teso would inevitably be left dealing with Metacluster case items, such as discovery, when Teso should be focusing on trial.

Metacluster would also suffer significant prejudice if the Court grants leave to amend. If and when it were ultimately to become a party to this lawsuit, nearly every deadline of import (save responsive expert reports, dispositive/*Daubert* motions, and trial) will have passed. Metacluster would have to rush to participate in discovery (including taking discovery of Luminati, producing discovery, and serving expert reports), and the Court will presumably have to extend deadlines to accommodate Metacluster's participation in this case as a party.

3.    The Amendment Is Not Important

The amendment sought by Luminati is not important. If the Court denies Luminati leave to amend to add Metacluster as a party, Luminati's claims against Metacluster will not have been

---

[2]    In *Garmin*, the Court allowed amendment to add a US-based party where the moving party had not received its opponent's infringement contentions as of the amendment deadline and where it had not then received the discovery that provided the basis for its claim—a situation not applicable here. 2007 WL 2903843, at *6. Trial in *Garmin* was also over a year away, there were no Hague Convention service issues, and the non-movant was unlikely to suffer any prejudice—all facts that further distinguish *Garmin* from the instant case. *Id.*

[3]    Assuming Teso could (or be expected to) do so in the first place, which is highly doubtful.

[4]    Teso did, however, timely disclose the corporate reorganization and Metacluster's role in selling the accused RTC product. *See* Section II.4-5, above.

adjudicated in this case, such that Luminati can file a separate lawsuit against Metacluster. And the Court might consolidate that separate lawsuit with one of Luminati's other co-pending cases for pretrial purposes. As a practical matter then, Luminati will not suffer prejudice if the Court denies it leave to amend.

### 4.    No Party Wants A Continuance

While a continuance could cure some of the prejudice that would otherwise befall Teso and Metacluster, no party wants a continuance. Teso, for its part, is eager to clear its name of Luminati's infringement accusations. Accordingly, the best path is to deny Luminati leave to amend which would allow Luminati, if it so chose, to file a separate lawsuit against Metacluster. In the alternative, if the Court grants leave to amend, it should continue the current deadlines for approximately six months to allow adequate time for Metacluster's addition as a party. In that event, the Court could coordinate this matter with *BI Science* and/or *IP Ninja* (which, to be clear, neither Teso nor Luminati wants).

### C.    Good Cause Does Not Exist To Amend The Complaint To Add New Infringement Theories

Luminati also seeks leave to amend its complaint to "update certain paragraphs [of the complaint] to reflect Luminati's understanding of the Accused Instrumentalities based upon non-public information produced during discovery." Mot. at 2; Mot., Ex. A at 11 (redline to proposed amended complaint showing Luminati's changed infringement theories).

The proper way for Luminati to amend its infringement contentions or theories, however, is by following the procedures set forth in this Court's Local Patent Rules and/or this case's Discovery Order—not by amending its complaint. *See* P.R. 3-6 (setting forth procedure for amending infringement contentions); ECF No. 32, Discovery Order, ¶ 3(a)(i) (party who asserts "that a claim

element is a software limitation" has "30 days after source code" production to "comply with P.R. 3-1 for those claim elements").

Accordingly, it is neither necessary nor appropriate for Luminati to amend its infringement contentions or theories via an amended complaint. As such, the Court should deny Luminati leave to amend its complaint to assert new infringement contentions or theories. Luminati should follow the Patent Rules and/or the Court's Discovery Order if it intends to amend its infringement contentions. If Luminati seeks to amend its contentions in such manner, Teso will evaluate the amendment and meet and confer with Luminati if there are any issues with the amendment.

## IV.   CONCLUSION

For these reasons, the Court should deny the Motion.

Dated: July 8, 2019

Respectfully submitted,

MICHAEL C. SMITH
  Texas State Bar No. 18650410
  michaelsmith@siebman.com
**SIEBMAN, FORREST,**
**BURG & SMITH LLP**
113 East Austin Street
Marshall, Texas 75671
Telephone: (903) 938-8900
Telecopier: (972) 767-4620

PAUL S. TULLY, PH.D.
  tully@mbhb.com
KURT W. ROHDE
  rohdek@mbhb.com
ANDREA K. ORTH
  orth@mbhb.com
**MCDONNELL BOEHNEN**
**HULBERT & BERGHOFF, LLP**
300 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 913-0001
Telecopier: (312) 913-0002

STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CRAIG TOLLIVER
  Texas State Bar No. 24028049
  ctolliver@ccrglaw.com
C. LUKE NELSON
  Texas State Bar No. 24051107
  lnelson@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Defendant UAB Teso LT*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on July 8, 2019. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

STEVEN CALLAHAN