**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LUMINATI NETWORKS LTD. <br><br>        Plaintiff, <br><br>     v. <br><br> UAB TESONET AND UAB METACLUSTER LT, <br><br>        Defendants. | Case No.  2:18-cv-299-JRG <br><br> JURY TRIAL DEMANDED |

### SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Luminati Networks Ltd. ("Luminati" or "Plaintiff") brings this action under the patent laws of the United States, Title 35 of the United States Code, and makes the following allegations against UAB Tesonet upon information and belief now known as UAB Teso LT ("Tesonet") and believed successor-in-interest UAB Metacluster LT ("Metacluster," collectively "Defendants"):

### THE PARTIES

1.     Plaintiff Luminati is an Israeli company having a principal place of business at 3 Hamahshev St., Netanya 42507, ISRAEL.

2.     Upon information and belief, Defendant Tesonet, upon information and belief now known as UAB Teso LT as stated by Defendant in in its Answer, is a Lithuanian corporation that was headquartered at Jasinskio Street 16, Vilnius, 03163 Lithuania as of the filing of the original complaint and is purportedly currently located at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.  Tesonet may be served pursuant to the provisions of the Hague Service Convention. Upon information and belief, as stated in Defendant's Answer (Dkt. 11), UAB Tesonet was

renamed UAB Teso LT on September 14, 2018.  Upon information and belief, as stated by Defendant UAB Teso LT in its May 3, 2019 responses to Plaintiff's first set of interrogatories, named Defendant UAB Tesonet LT underwent a corporate restructuring in September 2018, after the filing of the original complaint on July 19, 2018, resulting in the creation of the following sister companies to Teso LT: Oxysales, UAB, Metacluster lt, UAB, Code200, UAB and Coretech, UAB. As stated by Defendant UAB Teso LT in its May 3, 2019 responses to Plaintiff's first set of interrogatories, since the restructuring in September of 2018, UAB Teso LT has used, provided, sold or offered to sell the "Oxylabs Residential Proxy Service," provided previously by named defendant Tesonet.

3.      As stated by Defendant UAB Teso LT in its May 3, 2019 responses to Plaintiff's first set of interrogatories Defendant Metacluster, is a Lithuanian corporation related to Tesonet that did not exist as of the filing of the original complaint, but upon information and belief was subsequently incorporated as the result of a corporate restructuring of Tesonet.  Upon information and belief, Metacluster is located at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.  Upon information and belief, as stated by Defendant UAB Teso LT in its May 3, 2019 responses to Plaintiff's first set of interrogatories, since the restructuring in September of 2018, Metacluster has used, provided, sold or offered to sell the "Real-Time Crawler" Residential Proxy Service, provided previously by named defendant Tesonet.  Upon information and belief, as informed by recently produced discovery, Metacluster is a successor in interest in Tesonet's Real-Time Crawler residential proxy service.  Metacluster may be served pursuant to the provisions of the Hague Service Convention.

4.      Upon information and belief, named defendant Tesonet used, provided, sold, and offered to sell residential proxy services including Oxylabs Residential Proxy Service and Real-

2

Time Crawler Residential Proxy Service ("Accused Instrumentalities") at the time the original complaint was filed and these services continue to be advertised, sold, and offered for sale through Tesonet's website.  https://oxylabs.io/.  Upon information and belief, Defendants share common shareholders and jointly provide, sell and offer to sell the Accused Instrumentalities through the same website.  Upon information and belief, Defendants are jointly and severally liable for infringing the Asserted Patents.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq.*

6.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338, and 1367. Tesonet has not contested subject matter jurisdiction of this Court and accepted service of process.

7.      This Court has personal jurisdiction over Tesonet because it, directly or through its subsidiaries, divisions, groups, or distributors, has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2). On information and belief, Tesonet transacts substantial business in the State of Texas, directly or through agents, including: (i) at least a portion of the infringement alleged herein, and (ii) regularly does or solicits business in Texas, engages in other persistent courses of conduct, maintains continuous and systematic contacts within this Judicial District, purposefully avails itself of the privilege of doing business in Texas, and/or derives substantial revenue from services provided in Texas.  For example, on information and belief, Tesonet embeds its software, which is the subject of the infringement alleged herein, in a number of applications which are placed into the stream of commerce with the knowledge, understanding, and/or intention that they be downloaded and

executed by individuals located in the State of Texas, as well as this Judicial District, including the Marshall Division.  Tesonet has not contested personal jurisdiction of this Court and thereby acquiesced to personal jurisdiction by this Court.

8.     This Court has personal jurisdiction over Metacluster because it, directly or through its subsidiaries, divisions, groups, or distributors, has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2).  On information and belief, Metacluster transacts substantial business in the State of Texas, directly or through agents, including: (i) at least a portion of the infringement alleged herein, and (ii) regularly does or solicits business in Texas, engages in other persistent courses of conduct, maintains continuous and systematic contacts within this Judicial District, purposefully avails itself of the privilege of doing business in Texas, and/or derives substantial revenue from services provided in Texas.  For example, on information and belief, Metacluster embeds its software, which is the subject of the infringement alleged herein, in a number of applications which are placed into the stream of commerce with the knowledge, understanding, and/or intention that they be downloaded and executed by individuals located in the State of Texas, as well as this Judicial District, including the Marshall Division, causing these devices to serve as residential proxy devices for the accused residential proxy service.

9.     This Court has general jurisdiction over Tesonet due to its continuous and systematic contacts with the State of Texas and this jurisdiction.  Further, Tesonet is subject to this Court's jurisdiction because it has committed patent infringement in the State of Texas and this jurisdiction.

10.     Following *Brunette Machine Works v. Kockum Industries, Inc.*, 406 U.S. 706 1972), venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because,

upon information and belief, Defendants are foreign entities. Tesonet has not contested that venue is proper.

## FACTUAL ALLEGATIONS

11.     Derry Shribman and Ofer Vilenski are the sole inventors of a number of patents, including U.S. Patent Nos. 9,241,044 (Exhibit A, "'044 Patent") and divisional 9,742,866 (Exhibit B, "'866 Patent") (collectively the "Asserted Patents").

12.     The Asserted Patents are directed toward methods for fetching content over the internet through the use of intermediary tunneling devices. Luminati identifies its patents on its website   at   https://luminati.io/patent-marking#system-and-method-for-streaming-content-from-multiple-servers.

13.     The Asserted Patents were assigned to Hola Networks Ltd. ("Hola"). Hola has subsequently changed its name to Luminati Ltd., before changing its name to Luminati Networks Ltd., the Plaintiff in this action.

14.     Luminati, formerly known as Hola, provides a cloud service connecting tens of millions of devices over the Internet through a proxy-based network.  Each participating device allows the network to utilize a small fraction of that device's idle time for the network.  Luminati utilizes this network to provide proxy-based services to businesses.

15.     Since 2014, Luminati has offered proxy-based services relying on its "Residential Proxy Network" that practice one or more claims of the Asserted Patents.  Luminati permits its business customers to utilize its residential proxy network to gather data over the Internet using residential IP addresses from various localities as required by the customers.  These residential IP addresses provide businesses with a number of advantages.  For example, online retailers may use these addresses to gather comparative pricing information from its competitors, businesses may

utilize these addresses to test their web sites from any city in the world, and cyber security firms may employ these addresses to test web sites for malicious code.

16.     Prior to and separate from the technology at issue in this case, Hola provided a virtual private network ("VPN") service called HolaVPN.  Between November 2015 and June 2018, Hola, had a business relationship with Tesonet related to HolaVPN and Tesonet's VPN service called NordVPN.

17.     On May 22, 2017, during a meeting between Hola Chief Executive Officer Ofer Vilenski and Tesonet co-founder Tomas Okmanas, Mr. Okmanas informed Mr. Vilenski that Tesonet was thinking about entering into the residential proxy business.  Mr. Vilenski informed Mr. Okmanas that Luminati has patents in this field and sent an email to Mr. Okmanas that same day confirming that Luminati would send a letter identifying Luminati's intellectual property in this field.

18.     On June 1, 2017, outside counsel for Hola sent Mr. Okmanas a letter (Exhibit C) identifying the '044 Patent and U.S. Patent No. 8,560,604 as Hola patents covering a proprietary claim scope in the field of peer-to-peer based routing.

19.     On February 14, 2018, Luminati sent a second letter to Mr. Okmanas referencing the June 1, 2017 letter, further informing Tesonet of Hola's name change to Luminati and the issuance of the '866 Patent among other patents in the field of IP VPN services using peer-to-peer technology (Exhibit D).  This letter also notified Tesonet that products and services offered under Tesonet's "OxyLabs" brand infringe the Asserted Patents.

20.     On June 20, 2018, counsel for Tesonet sent a letter to Luminati's counsel acknowledging receipt of the February 14, 2018 letter but denying that Tesonet's Oxylabs product

practices claims of the Asserted Patents.  Upon information and belief, "Oxylabs" is the brand name for Defendants' residential proxy services.



https://oxylabs.io/

     21.    Upon information and belief, Defendants offer large-scale web data extraction products and services under the OxyLabs brand." https://oxylabs.io/ (Exhibit E). Upon information and belief, this includes a residential proxy network with ten million residential IP addresses from more than 180 countries.  https://oxylabs.io/.  Upon information and belief, these residential proxies are IP addresses that are assigned from a standard Internet Service Provider (ISP) to a homeowner or other residential or mobile user.  https://oxylabs.io/.  Upon information and belief, this residential proxy network is used to access content over the Internet, wherein that content may be divided into portions, each of which includes part of the content and its own content identifier. Upon information and belief, Defendants' residential proxy network supports the residential proxy

services of "Residential Proxy Service" and "Real-Time Crawler."  Upon information and belief

Tesonet has a contractual relationship with the related company Metacluster requiring Metacluster

to provide residential proxy devices in support of the "Real-Time Crawler" service.

**WHAT SOLUTIONS DO YOU OFFER?**

Here at Oxylabs, we offer data center IPs and residential proxies that support HTTP/HTTPS & Socks
4/5 protocols.
- A Residential Proxy is an IP address that is assigned from a standard Internet Service Provider
  (ISP) to a homeowner.
- A Data Center IP is an IP address that comes from a secondary corporation and is not owned
  by an ISP.

https://oxylabs.io/.



https://oxylabs.io/proxies/residential-proxies. (Exhibit F)

8

## Residential Proxy Network

⊖ **WHY SHOULD I USE A RESIDENTIAL PROXY NETWORK?**

Residential proxies enable data collection without IP bans and ensure a high anonymity level. These IPs mostly belong to large internet and mobile service providers, that's why other websites don't block users with these kinds of IPs.

⊖ **HOW OFTEN ARE RESIDENTIAL PROXIES CHECKED FOR BEING UP?**

All of our residential proxies are being checked every 60 seconds.

⊖ **CAN I SELECT A PROXY FROM SPECIFIC COUNTRY OR CITY?**

Yes, you can specify in the authorization header which city IP to use to process the request.

# Real-Time Crawler for e-commerce

Track product pricing changes in the most popular retail marketplace. With Real-Time Crawler, you can extract data from product pages, product offer listing pages, reviews, questions & answers, search results or from any URL in general.

What about the residential proxy pool? These proxies enable data collection without IP bans, this way assuring anonymity as well. The same goes for the Real-Time Crawler as it uses both data center and residential proxies.

All localized domains and pagination are supported. Historical pricing data is stored as well.

https://oxylabs.io/products/real-time-crawler

9

https://oxylabs.io/faq. Upon information and belief, these residential proxies include IP addresses located in Marshall, Texas.

22.     Upon information and belief, the OxyLabs residential proxy network is based upon numerous user devices, each of which is a client device identifiable over the Internet by an IP address.  Upon information and belief, these user devices become part of the network through the execution of Defendants' code embedded in applications downloaded by that devices user.  Upon information and belief, these devices send their identifier to a server ("First Server"), such as Oxylab's dedicated proxy servers, which store these identifiers.

23.     Upon information and belief, Defendants have developed or are developing OxyLabs embedded software for different platforms including Google Android and Windows. Upon information and belief, while frequently renamed, the above OxyLabs embedded software that enables the residential proxy network includes embedded code named "genericexitnode," "winnerbot," "CoffeeService," "instantcoffee," and "ENService."

24.     Upon information and belief, the above OxyLabs embedded code has been integrated and is believed to be currently embedded in at least the following software application(s) that may be downloaded by any user located anywhere having Internet access: Birrastorming Ideas, S.L's "VL Video Player IPTV;" CC Soft's "Followers Tool for Instagram;" Glidesoft Technologies' "Route Finder;" ImaTechInnovations' "3D Wallpaper Parallax 2018;"  Softmate a/k/a Toolbarstudio Inc.'s "AppGeyser" and "Toolbarstudio"; Mobimento Mobile SI's "Mobincube"; Smart Media Internet Marketing Ltd.'s, also known as Mobbo, "TapVPN Free VPN"; Smartshark App's "Moments Cartoon Caricature," "Daily Horoscope Orion," "Star horoscope," "Daily horoscope," and "AliFeed"; Kafui Util's "Smart Kit 360";  Astrology and Horoscope Studio's "Cartoon Yourself," "Daily Horoscope," and "Horoscope Sirius," and

Auslogic's "Auslogics Disk Defrag Free," "Auslogics Duplicate File Finder," Auslogics Registry Cleaner," "Auslogics Browser Care," "Auslogics Registry Defrag," and "Auslogics Windows Slimmer."

25.     Upon information and belief, an OxyLabs customer may utilize the OxyLabs residential proxy network by sending a request ("First Request") from the customer's device ("First Device") to the above First Server, which responds by sending the IP address ("Second Identifier") corresponding to one of a group of client devices in the proxy network, any one of which may serve as a proxy device ("Second Device") back to the First Device.

26.     Upon information and belief, having received the Second Identifier, the Accused Instrumentalities then send a request ("Second Request") to the Second Device for specific Internet data ("First Content") identified by an identifier ("Content Identifier") from a target server ("Second Server") identified by its own identifier ("Third Identifier"), which is forwarded by the Second Device to the Second Server.  Upon information and belief, the target Second Server responds to the forwarded Second Request by sending the First Content to the Second Device, which is then forwarded back to the Oxylabs customer at the First Device.  Upon information and belief, to the extent that the requested content is divided into portions or slices, the First Device can construct the content from the plurality of Content Slices.

27.     The use of the residential proxy network permits anonymity to Oxylabs customers, such as for engaging in activities like as web crawling, without disclosing its identity to the targeted web sites.

28.     Since the filing of the original complaint on July 12, 2018, Tesonet has posted information on its website under the title of "Bust the Bully: $100,000 for Prior Art" including allegations that Luminati (a) is "threatening companies for alleged patent infringement without

any evidence," (b) "chooses to harass big and small companies alike" (c) "is also trying to disrupt its competitors' ability to compete on equal terms by sending lawsuit threats to clients of the competing companies," (d) "is using this unjustified business method to intimidate smaller market players," (e) is "engaged in deceptive behavior," and (f) "has no patent rights outside of the United States because their European applications for patents mentioned above have been withdrawn due to lack of novelty."  https://oxylabs.io/bounty.  This webpage includes an offer of a "bounty" for "prior art that will be successfully used to invalidate Luminati's patents."

29.    Upon information and belief, Tesonet has advertised the above $100,000 bounty on its own website as well as on other publicly accessible websites, including Google.  As shown in the first two images below, Tesonet had placed an advertisement through its Oxylabs brand specifically targeting the Luminati brand that displays its bounty against Luminati upon a search of "luminati" in Google's webpage.  The Oxylabs hyperlink directs viewers to Tesonet's "Bust the Bully" webpage.  The below images are exemplary Tesonet advertisements posted since the filing of the original complaint.





https://www.google.com/search?q=luminati&oq=luminati&aqs=chrome..69i57j0l5.2328j0j8&sourceid=ch

luminati

All    Images    News    Videos    Maps    More                    Settings    Tools

About 589,000 results (0.35 seconds)

### Invalidate Luminati.io patents | Alleged patent infringement
[Ad] www.oxylabs.io/bounty ▼
A financial reward for prior art that can be used to invalidate **Luminati**.io patents. Help us to prevent **Luminati**.io from threatening companies for alleged patent infringement.

### Residential IP and Proxy Service for Businesses. Luminati
https://luminati.io/ ▼
World's largest proxy service with a residential proxy network of 36M IPs worldwide and proxy management interface for zero coding. Start a 7-day free trial »
FAQ · About · Luminati SDK · Learning hub

Affordable price. Services. Rank Tracker API, SERP API, Keyword Data API.
Pricing · Docs · FAQ · APIs

### False claims by Luminati.io | $100,000 for Prior Art
[Ad] www.oxylabs.io/bounty ▼
A financial reward for prior art that can be used to invalidate **Luminati**.io patents. Help us to prevent **Luminati**.io from threatening companies for alleged patent infringement.





30.     Upon information and belief, Tesonet directed the above advertising toward Luminati's customers and prospective customers seeking to harm Luminati's business relationships.

31.     Upon information and belief, at least since the filing of the original complaint, Mr. Urtė Černiauskaitė, legal counsel at Tesonet, contacted former Luminati employees seeking information.  Upon information and belief, Mr. Černiauskaitė has represented that Tesonet is willing to pay former Luminati employees for assistance and has an allocated budget to do so. Current and former Luminati employees are subject to a Personal Employment Agreement ("Employment Agreement"). The terms of the Employment Agreement include a confidentiality provision obligating the employee to keep in confidence Luminati's proprietary information.  In addition to other proprietary information, at least one former employee approached by Mr. Černiauskaitė has knowledge regarding Luminati's residential service architecture.

32.     Upon information and belief, Tesonet has been seeking confidential information from former Luminati employees.

33.      Tesonet has sent communications to email addresses registered in Luminati's residential proxy service, including customer emails and test emails generated by Luminati for the purpose of testing Luminati's proxy service.  Upon information and belief, Tesonet has contacted Luminati customers using proprietary Luminati information derived from at least Luminati's confidential customer lists.  Upon information and belief, Tesonet has acquired this information through unauthorized access to Luminati's secure computer system.

34.     Upon information and belief, Tesonet has used Luminati's proprietary information to derive a competitive advantage interfering with Luminati's business relationships with its clients and causing Luminati to lose customers.

**COUNT I**
(Infringement of the '044 Patent)

35.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-34 of this Complaint as if fully set forth herein.

36.     The '044 Patent entitled "System and Method for Improving Internet Communication by Using Intermediate Nodes" was duly and legally issued by the U.S. Patent and Trademark Office on June 19, 2016 from Application No. 14/468,836 filed on August 26, 2014, claiming priority to provisional applications 61/870,815 filed on August 28, 2013. A true and accurate copy of the '044 Patent is attached hereto as Exhibit A.

37.     Each and every claim of the '044 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

38.     Luminati exclusively owns all rights, title, and interest in and to the '044 Patent and possesses the exclusive right of recovery, including the exclusive right to recover for past infringement.

39.     Claim 81 of the '044 Patent recites:

Claim 81. A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of:
(a) sending the first identifier to the first server;
(b) sending a first request to the first server;
(c) receiving the second identifier from the first server;
(d) sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier; and
(e) receiving the first content from the second device.

40.     As described above in the above paragraphs, upon information and belief, Defendants' OxyLabs proxy residential network comprises numerous devices each of which is

identifiable by its own IP address ("identifier"), which are stored on Defendants' servers. Consequently, Defendants' OxyLabs proxy residential network would comprise at least a First Device and Second Device with their corresponding First Identifier and Second Identifier and a First Server.

41.     As described above, upon information and belief, this network would permit a user to access Internet content ("First Content"), identifiable by a content identifier such as a URL ("First Content Identifier") from a target server ("Second Server"), identifiable by its own corresponding IP address ("Third Identifier").

42.     As described above, upon information and belief, the user devices of the OxyLabs proxy residential network, any one of which could be a "First Device"  sends its corresponding IP address ("First Identifier") to the OxyLabs server or "First Server," which stores these identifiers.

43.     As described above, upon information and belief, an OxyLabs customer can utilize their device, which would be the First Device, to send a request ("First Request") to the First Server, causing the First Server to respond by sending the Second Identifier back to the First Device.  Upon information and belief, the OxyLabs customer can then send a second request ("Second Request"), comprising a First Content Identifier and a Third Identifier to the Second Device, which forwards the First Content Identifier to the Second Server.  Upon information and belief, the Second Server responds by sending the requested First Content to the Second Device, which is forwarded back to the First Device.

44.     Tesonet and successor-in-interest Metacluser had actual notice of the '044 Patent since at least June 1, 2017, and has known, including by way of communications on and since June 1, 2017 and this lawsuit, that implementation of the Accused Instrumentalities would infringe at least claim 81 of the '044 Patent.

45.     Defendants have been and are now directly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 81 of the '044 Patent, by implementing their residential proxy service in the United States without authority and/or license from Luminati and are liable to Luminati under 35 U.S.C. § 271(a).

46.     Defendants have been and are now indirectly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 81 of the '044 Patent, by providing this residential proxy service to their customers knowing that the use of such service infringes these claims in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(b).

47.     As a result of Defendants' infringement of the '044 Patent, Luminati has suffered and continues to suffer damages.  Thus, Luminati is entitled to recover from Defendants the damages Luminati sustained as a result of Tesonet's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court under 35 U.S.C. § 284.

48.     Luminati has suffered damage because of the infringing activities of Defendants, their officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless Defendants' infringing activities are preliminarily and permanently enjoined by this Court.

49.     Defendants' infringement of the '044 Patent was, is, and continues to be deliberate and willful because Tesonet was and is on notice of the '044 Patent at least as early as June 1, 2017, yet Defendants continued and continue to infringe the '044 Patent.

**COUNT II**
(Infringement of the '866 Patent)

50.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-49 of this Complaint as if fully set forth herein.

51.     The '866 Patent entitled "System and Method for Improving Internet Communication by Using Intermediate Nodes" was duly and legally issued by the U.S. Patent and Trademark Office on August 22, 2017 from Application No. 14/930,894 filed on August 22, 2017, a divisional of Application No. 14/468,836 that issued as the '044 Patent, both of which claim priority to provisional applications 61/870,815 filed on August 28, 2013. A true and accurate copy of the '866 Patent is attached hereto as Exhibit B.

52.     Each and every claim of the '866 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

53.     Luminati exclusively owns all rights, title, and interest in and to the '866 Patent and possesses the exclusive right of recovery, including the exclusive right to recover for past infringement.

54.     Claim 15 of the '866 Patent recites:

Claim 15. A method for fetching a content over the Internet from a first server identified in the Internet by a second identifier via a group of multiple devices, each identified in the Internet by an associated group device identifier, the method comprising the step of partitioning the content into a plurality of content slices, each content slice containing at least part of the content, and identified using a content slice identifier, and for each of the content slices, comprising the steps of:
(a) selecting a device from the group;
(b) sending over the Internet a first request to the selected device using the group device identifier of the selected device, the first request including the content slice identifier and the second identifier;
(c) in response to receiving the sent first request by the selected device, receiving over the Internet the content slice from the selected device; and wherein the method further comprising the step of constructing the content from the received plurality of content slices, and
wherein each of the devices in the group is a client device.

55.     As described above, upon information and belief, Defendants' OxyLabs proxy residential network comprises numerous devices, each of which is a client device identifiable by its own identifier.  Defendants' OxyLabs proxy residential network permits Defendants' customers to request content from the customer's device ("First Device") identifiable by its own IP address ("First Identifier") via a proxy device ("Second Device"), selected from a group of client devices ("Group") each of which has its own IP address ("Group Device Identifier"), from a target server ("First Server") identifiable by its own IP address ("Second Identifier").  As further described above, this content may be divided into portions ("Content Slices") identifiable by their own identifiers ("Content Slice Identifier").

56.     As described above, upon information and belief, this network would permit the First Device to select a Second Device from the Group and send a request ("First Request") over the internet to the Second Device using the selected second device IP address ("Second Device Identifier").  This First Request includes the Content Slice Identifier and Second Identifier.

57.     As described above, upon information and belief, the above Second Device responds to the First Request by sending a second request ("Second Request") to the First Server with the Content Slice Identifier.  The First Server responds by sending the requested Content Slice to the Second Device, which forwards the Content Slice back to the receiving First Device.  The First Device then constructs the content from the plurality of Content Slices.

58.     Tesonet and successor-in-interest Metacluser have had actual notice of the '866 Patent since at least February 14, 2018, and has known, including by way of communications on and since February 14, 2018 and this lawsuit, that implementation of the Accused Instrumentalities would infringe at least claim 15 of the '866 Patent.

59.     Defendants have been and are now directly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '866 Patent, by implementing their residential proxy service in the United States without authority and/or license from Luminati and are liable to Luminati under 35 U.S.C. § 271(a).

60.     Defendants have been and are now indirectly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '866 Patent, by providing this residential proxy service to their customers knowing that the use of such service infringes these claims in the United States without authority and/or license from Luminati and are liable to Luminati under 35 U.S.C. § 271(b).

61.     As a result of Defendants' infringement of the '866 Patent, Luminati has suffered and continues to suffer damages.  Thus, Luminati is entitled to recover from Defendants the damages Luminati sustained as a result of Defendants' wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court under 35 U.S.C. § 284.

62.     Luminati has suffered damage because of the infringing activities of Defendants, their officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless Defendants' infringing activities are preliminarily and permanently enjoined by this Court.

63.     Defendants' infringement of the '866 Patent was, is, and continues to be deliberate and willful because Tesonet was and is on notice of the '866 Patent at least as early as February 14, 2018, yet Defendants continued and continues to infringe the '866 Patent.

**COUNT III**

(Misappropriation of Trade Secret Under Federal Defense of Trade Secret Act Under 18 U.S.C. § 1836 *et sec.*)

64.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-64 of this Complaint as if fully set forth herein.

65.     Luminati takes reasonable measures to protect the confidentiality of valuable trade secrets related to its residential proxy service, including automated and technical measures in addition to the requirement that its employees protect the confidentiality of Luminati trade secrets. This non-public information has actual independent economic value derived from Luminati's experience in the residential proxy service field.

66.     Luminati's residential proxy service is intended for use in interstate or foreign commerce, including commerce in the Eastern District of Texas.

67.     Upon information and belief, Tesonet misappropriated Luminati's trade secrets including but not limited to Luminati's customer list for the purpose of competing with Luminati's residential proxy service.

68.     Luminati has suffered damages and Tesonet has been unjustly enriched as Luminati lost business to Tesonet's competing Oxylabs service as a result of Tesonet's misappropriation of Luminati's trade secrets.

69.     Tesonet's misappropriation of Luminati trade secrets was willful and malicious.

70.     Luminati is entitled to recover the actual loss suffered by Luminati, any additional damages to account for Tesonet's unjust enrichment, and exemplary damages as a result of Tesonet's misappropriation of its trade secrets under 18 U.S.C. § 1836(b)(3)(B) and (C) *et sec*.

**COUNT IV**
(Intentional Unauthorized Access of Protected Computer Under 18 U.S.C. § 1030(g) *et sec.*)

71.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-71 of this Complaint as if fully set forth herein.

72.     Upon information and belief, Tesonet intentionally accessed Luminati's computer system without authorization and misappropriated Luminati's trade secrets, including Luminati's customer list relating to Luminati's residential proxy service which is used interstate and foreign commerce, including commerce in the Eastern District of Texas.

73.     Luminati suffered damage through the misappropriation of data on its computer system.  Luminati also suffered loss in excess of $5,000 in value within the last year through the expense of investigating the intrusion in Luminati's computer system.

74.     Luminati is entitled to recover compensatory damages and an injunction against the use of Luminati's confidential information under 18 U.S.C. § 1030(g).

**COUNT V**
(False Advertising Under 15 U.S.C. § 1125(a) *et sec.*)

75.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-75 of this Complaint as if fully set forth herein.

76.     Upon information and belief, since the filing of the original complaint and in retaliation thereto, Tesonet has engaged in false advertising against Luminati under 15 U.S.C. § 1125(a) by making false advertisements to the public at large, including Luminati's customers. Through these false advertisements, Luminati believes and thus avers that Tesonet has materially represented Luminati's business practices, the basis for Luminati's complaint against Tesonet, the value of Luminati's intellectual property rights, and the nature and characteristics of Tesonet's own residential proxy service.

77.     Tesonet caused its false advertising to enter interstate commerce, including upon information and belief in the Eastern District of Texas.  Tesonet's false advertising has at been

distributed through at least Internet communications and advertisements including, but not limited to, advertisements placed with Google responsive to queries regarding Luminati.

78.     Tesonet's actions have deceived, or are likely to deceive, a substantial segment of Luminati's customers who have purchased or would otherwise purchase Luminati's residential proxy service.

79.     Tesonet's actions have caused Luminati injury to a commercial interest in both its business reputation and its sales by its customers.  Luminati's commercial injuries are a direct result of Tesonet's false statements directed to Luminati's customers regarding Luminati's intellectual property and business practices.

80.     Luminati is entitled to a judgment that Tesonet has engaged in false advertising against Luminati, which is the direct cause of Luminati's injuries to its commercial interests in its reputation and sales under 15 U.S.C. 1125(a), and damages pursuant to 15 U.S.C. § 1117.

81.     This case is exceptional, given Tesonet's extensive targeting of Luminati customers and prospective customers through its disparaging and deceptive online advertising campaign. Luminati is entitled to an award of attorneys' fees as this case is exceptional under 15 U.S.C. § 1117(a).

### COUNT VI
(Tortious Interference with Luminati's Business Relationships)

82.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-82 of this Complaint as if fully set forth herein.

83.     Luminati has contractual relationships with numerous customers, including customers that are registered in the Eastern District of Texas and/or use Luminati's residential proxy service in the Eastern District of Texas.

84.     Upon information and belief,  Tesonet has used Luminati proprietary information to intentionally and willfully contact Luminati customers and interfere with Luminati's relationship with these customers.

85.     Luminati has suffered damages and Tesonet has been unjustly enriched as Luminati lost business to Tesonet's competing Oxylabs  service.  Tesonet's interference with Luminati's customer relationships was the proximate cause of this lost business.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Luminati respectfully requests that this Court enter:

A.  A judgment that each of the Asserted Patents is valid and enforceable.

B.  A judgment in favor of Luminati that the Defendants have and are infringing the Asserted Patents;

C.  A judgment declaring Defendants' infringement to be willful.

D.  A judgment declaring that this case is exceptional within the meaning of 35 U.S.C. § 285;

E.  A permanent injunction enjoining Defendants, their officers, directors, agents, servants, employees, associates, partners, and other persons who are in active concert or participation with Defendants, from infringing the Asserted Patents and/or such other equitable relief the Court determines is warranted in this case;

F.  A judgment and order requiring the Defendants to pay to Luminati its damages, enhanced damages, costs, expenses, prejudgment and post-judgment interest, and attorneys' fees, if applicable, for the Defendants' infringement of the Asserted Patents as provided under 35 U.S.C. §284 and/or §285, and an accounting of ongoing post-judgment infringement;

G.  A judgment in favor of Luminati that the Tesonet's misappropriated Luminati's trade secrets under 18 U.S.C. § 1836(b);

H.  A judgment and order for damages under 18 U.S.C. § 1836(b)(3)(B);

I.  A judgment and order for exemplary damages under 18 U.S.C. § 1836(b)(3)(C);

J.  A judgment in favor of Luminati that the Defendant accessed Luminati computer systems under 18 U.S.C. § 1030(a)(5)(B);

K.  A judgment and order for compensatory damages under 18 U.S.C. § 1030(g);

L.  A permanent injunction requiring Tesonet to destroy all proprietary information gathered through the unauthorized access of Luminati's computer system under 18 U.S.C. § 1030(g);

M.  A judgment in favor of Luminati that Tesonet had engaged in false advertising against Luminati, and order requiring Tesonet to pay monetary relief to Luminati, including (i) profits received by Tesonet and/or damages sustained by Luminati as a result of Tesonet's false advertising and (ii) damages in the form of money to be spent on corrective advertising, to dispel any actual confusion that may have already occurred among relevant consumers and in the marketplace by virtue of Tesonet's false advertising;

N.  That Tesonet be found to have acted wilfully in its false advertising, and that monetary relief for Tesonet's false advertising be increased due to the wilfull nature of Tesonet's false advertising pursuant to 15 U.S.C. § 1117;

O.  A permanent injunction enjoining Tesonet, its officers, employees, agents, representatives, attorneys and others acting on its or their behalf, from committing further acts of false advertising described herein;

26

P.  A declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, 15 U.S.C. § 1117(a) and/or other applicable laws, and that Luminati is entitled to recover its reasonable attorney's fees and costs upon prevailing in this action;

Q.  A judgment in favor of Luminati that the Tesonet tortiously interfered with Luminati's business relationships;

R.  Disgorgement of the amount by which Tesonet has been unjustly enriched; and

S.  Any and all other relief, at law or in equity that this Court deems just or proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Luminati hereby demands a trial by jury of all issues so triable.

Dated: July 23, 2019

Respectfully submitted,

By: */s/ Korula T. Cherian*

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Robert Ruyak
Corrine Saylor Davis
Ronald Wielkopolski
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006

Korula T. Cherian
Robert Harkins

RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702

Attorneys for Plaintiff
Luminati Networks Ltd.