**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **Luminati Networks Ltd.,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**UAB Tesonet and UAB Metacluster LT,**<br><br>    **Defendants.** | **Civil Action No.<br>2:18-cv-00299-JRG** |

**DEFENDANTS' SUR-REPLY TO LUMINATI'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

SIEBMAN, FORREST,
BURG & SMITH LLP

MICHAEL C. SMITH

CHARHON CALLAHAN
ROBSON & GARZA, PLLC

STEVEN CALLAHAN
CRAIG TOLLIVER
C. LUKE NELSON
GEORGE T. "JORDE" SCOTT

*Counsel for Defendants UAB Teso LT
and UAB Metacluster LT*

Luminati filed a nine-page Motion for Partial Summary Judgment (ECF No. 214 ("MSJ")) which included less than 1.5 pages of an Argument section and was based **entirely** on Luminati's Motion to Strike ("MTS") certain portions of Dr. Freedman's Expert Report. MSJ at 1, 8. Teso's Opposition to Luminati's MTS (ECF No. 249 ("MTS Opp.")), and its MSJ Opposition (ECF No. 251 ("MSJ Opp.")) which incorporated the same, showed that Luminati misrepresented Dr. Freedman's analysis and that its MTS should be denied. Rather than accept that its MSJ should be defeated for the same reasons—especially given the fact that Luminati expressly premised its MSJ on its MTS—Luminati has now filed a Reply (ECF No. 263) in support of its MSJ that, at ten pages, is one page longer than its underlying MSJ brief and five pages longer than the Local Rules permit (absent leave of Court).[1]

Teso does not seek to strike Luminati's Reply, but points out this incongruity to show that, by filing a lengthy Reply, Luminati now appears to pretend that its summary judgment motion was something other than a simple tag-along motion to its MTS. For example, Luminati now chastises Teso for filing a short opposition to the MSJ rather than using "30 pages" (Reply at 2), even though Teso fully and completely controverted Luminati's MTS and, hence, the MSJ. The fact is that Luminati's MSJ must fail because Luminati's MTS fails, and Luminati's Reply cannot change that.

### A.      Luminati Continues to Ignore Dr. Freedman's Obviousness Combinations

Teso showed the detailed obviousness and enablement analysis conducted by Dr. Freedman in both the body of his Report and in his individual claim charts. MTS Opp. at 2-9. In so doing, Teso showed that Luminati grossly mischaracterized Dr. Freedman's analysis, including

---

[1] Local Rule CV-7(a)(2) specifies that motions for partial summary judgment are non-dispositive motions, for which a party should file a reply brief of five pages or less absent leave of Court.

by arguing that Dr. Freedman's claim charts were strictly limited to anticipation and that Dr. Freedman allegedly had not disclosed any obviousness combinations. *Id.* at 10-11.

In its Reply, Luminati argues that it is insufficient to argue that "any combination of anticipatory references will fill any gaps in any other such reference," citing to *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 14-CV-245, 2015 WL 12781255, at *2 (D. Minn. Nov. 30, 2015). *Select Comfort* required the defendant to identify (i) "each of the elements missing in the primary reference of each combination," (ii) "each secondary reference that supplied the missing element," and (iii) "where in each secondary reference the missing element was found." *Id.* at *2.

This is precisely what Dr. Freedman did. To use a specific example,[2] Dr. Freedman stated, at paragraphs 65-66, his opinion that Shribman rendered obvious claim 94, which concerns a device being "randomly selected out of the devices in the group." The portion of the Shribman chart (Appx. C at C-31) for claim 94 explains (i) the relevant disclosure in Shribman regarding the selection of devices out of a group, (ii) that it is obvious to select items randomly as one means of selection, including as shown by the patentees' admissions about random selection, and (iii) that both Prince and CoralCDN—which, like Shribman, also concern the usage of proxies— teach random selection of devices, which Dr. Freedman specifically shows in the Prince and CoralCDN claim charts. Dr. Freedman points to the similarity of subject matter and similarity of proposed benefits of the references, as well as to the description in the body of his report, as supporting the motivation to combine Shribman with Prince or CoralCDN. Freedman Report, Ex. C at C-32; *see also* MTS Opp. at 2-9. As explained in Teso's Opposition, Dr. Freedman also conducted a similarly detailed obviousness analysis for each claim limitation alleged to be *anticipated* by a reference, if the limitation is deemed not to be anticipated. Dr. Freedman showed which

---

[2] Dr. Freedman identifies in his report each specific claim that he opines is rendered obvious (rather than anticipated) by any reference, at paragraphs 57, 66, 75, 84, 93, 102, and 112.

references would be combined, to the extent that he asserted an obviousness combination. *See* MTS Opp. at 6-9 (providing examples).

*Select Comfort* therefore supports the sufficiency of Dr. Freedman's opinions. Luminati's citation to *UltimatePointer, LLC v. Nintendo Co.* is similarly misplaced. In *UltimatePointer*, the expert "simply state[d] that the lack of a 'direct pointing device' limitation" in a prior art reference did not preclude a finding of obviousness because "one skilled in the art would have readily recognized at the time of the alleged invention that [the reference] could easily be modified or configured to be a direct pointing device." 14-CV-0865, 2014 WL 7340545, at *6 (W.D. Wash. Dec. 22, 2014). Therefore, the expert, unlike Dr. Freedman, did not provide any references to be combined to arrive at the limitation, or any motivation to combine. In *Godo Kaisha*, which Luminati also cites, the expert "fail[ed] to identify which specific claim elements he believe[d] would be obvious" and instead vaguely opined that a reference would render a claim obvious if it did not anticipate. 16-CV-134, 2017 WL 2839493, at *1. In contrast, Dr. Freedman meticulously pointed out each and every claim limitation that would be obvious (to the extent not deemed anticipated) and the express reasons therefor, as explained in Teso's Opposition.

## B.    Luminati Continues to Confuse Dr. Freedman's Single-Reference Obviousness Analysis and His Combination Analysis

Teso previously explained that Dr. Freedman has both single-reference obviousness and obviousness combination opinions, which Luminati ignored. MTS Opp. at 10-13. With respect to the obviousness combinations, Dr. Freedman applied four references for the '044 patent and four references for the '866 patent. *See, e.g.*, *id.* at 6-9. In footnote 2 of its Reply, Luminati misrepresents Dr. Freedman's analysis by suggesting that he proposes an actual combination of Prince with three references, or any of more than 20 prior art admissions by the patentees. Reply at 2 n.2. Luminati therefore falsely concludes that Dr Freedman is proposing "literally hundreds or

more" potential combinations. *Id.*

These misrepresentations appear to be caused by Luminati's continued failure to understand the difference between single-reference and combination obviousness analyses. Luminati's footnote 2 concerns the Prince chart, but Teso explained in its Opposition (with respect to Prince) that Dr. Freedman specifically explains how Prince could be combined with either Shribman, Jacobsson, or CoralCDN with respect to their teachings regarding, for example, claim limitation 81(d). MTS Opp. at 11-12 (referencing Freedman Rep. Ex. A at A-8). Dr. Freedman separately discussed certain specific admissions by the patentees that showed the knowledge of a POSA relating to claim limitation 81(d). Freedman Rep., Ex. A at A-7. However, Dr. Freedman **never in any of his charts** proposes any boundless obviousness combination of twenty references, as Luminati falsely states in footnote 2. Instead, he addresses certain specific combinations or, for the purposes of single-reference obviousness, he explains the specific patentees' admissions he relies on to further show the knowledge of a POSA and why certain limitations would have been obvious. *See* MTS Opp. at 11-12 (providing exemplary references to claim limitations 81(b) and 81(d) of Appendix A). But he does not, for any claim, assert a laundry list of "hundreds" of combinations.

### C.    Luminati Simply Disagrees With Dr. Freedman's Motivations to Combine

Teso showed in its Opposition the many ways that Dr. Freedman explained a POSA's motivations to combine the references that he raised for any particular claim limitation. MTS Opp. at 3-9. For example, the references that Dr. Freedman seeks to combine teach nearly identical subject matter—either obtaining content by a client device from a target server using proxy devices or using multiple devices or proxies to obtain slices of content for a requesting client/user, so that the content can be constructed from the slices. *See id.* Further, the references discuss substantially similar benefits to be obtained by usage of each of their teachings. *See id.*

When one references this disclosure in view of Dr. Freedman's careful, and particularized, explanations of the patentees' admissions and the general knowledge of a POSA, as well as his discussions of BitTorrent and the knowledge of content on origin servers, one can see that Dr. Freedman's opinions are more than sufficient, and are reliable and helpful. *See id.*

### D.      Luminati Concedes That the Technology At Issue is Simple

To be clear, the Court should not strike any portion of Dr. Freedman's expert report for all of the reasons explained in Teso's Oppositions to the MTS and MSJ. However, even if the Court strikes some portion of Dr. Freedman's expert report regarding obviousness, Luminati's Reply does not appear to contest the fact that this case concerns basic and easily understandable technology (Reply at 8-9), which Teso showed in its Opposition. MSJ Opp. at 4-5. In such a circumstance, the jury can assess the obviousness case without any expert testimony. *See id.*

Luminati's only response is to again argue the fiction that Teso has not shown any "specific obviousness combination[s]" or any motivation to combine. Reply at 9. This is simply false. Dr. Freedman's Report specifically described his proposed obviousness combinations and the motivations for a POSA to combine them. MTS Opp. at 2-11. Again, the Court should permit Dr. Freedman to present his obviousness combinations to the jury. But *even if* the Court deems his obviousness discussion as an insufficient expert disclosure, a jury is perfectly capable of weighing the obviousness combinations that are identified in Dr. Freedman's Report. *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1242 (Fed. Cir. 2010).

### E.      The Court Should Not Grant Summary Judgment as to Enablement

Luminati's MSJ regarding enablement is solely dependent on its Motion to Strike. MSJ at 9. Teso showed in its Opposition that Dr. Freedman's enablement analysis was sufficient and included analysis of the *Wands* factors. MTS Opp. at 14-15.

Dr. Freedman's non-enablement argument as to claim 81 is not the same as definiteness, and it does not depend on "an unsupported claim construction argument." Reply at 10. Teso did argue that Luminati's claim 81 was indefinite, but, even if definite, Luminati's overly broad claim is separately subject to attack if its full scope is not enabled. *See In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988) (stating "breadth of claims" as enablement factor). Enablement and definiteness are two separate issues. Teso is not rearguing any portion of claim construction, but, instead, it accepts the Court's claim construction—including the holding that the preamble is limiting—and shows why the full scope of the claim is not enabled. MTS Opp. at 14-15.

As Teso pointed out, the Court acknowledged the possibility of an enablement challenge in the Claim Construction Order which upheld the definiteness of claim 81. Opp. at 15. And with respect to the "from the second server" issue (which is just one of Dr. Freedman's enablement arguments), Dr. Freedman explained how the specification fails to teach a POSA how to practice the full claim scope without undue experimentation, including because of its lack of guidance and the inconsistent teachings in the specification. Opp. at 15 (citing paragraphs 175-183 of Dr. Freedman's Report).[3]

Further, Luminati argues that the "second server" is "simply a web server" and that "no possible undue experimentation" could be required. Reply at 3. This reveals that Luminati just disagrees with Dr. Freedman's conclusions. Luminati's factual disagreement with Dr. Freedman should be resolved at trial, not in the context of a motion to strike or summary judgment motion.

---

[3] Luminati's citation to *Nanology Alpha LLC v. Witec Wissenschaftliche Instrumente Und Technologie Gmbh* is unavailing. Reply at 10. In *Nanology Alpha*, the expert did not address any of the *Wands* factors and did not show what was missing from the specification. 16-CV-00445, 2018 WL 4289342, at *6 (E.D. Tex. July 11, 2018). Dr. Freedman applies the *Wands* factors, and explains that the specification fails to teach how the "second device" must obtain content "from a second server" to satisfy claim 81 as construed. Opp. at 14-15.

### F.      Luminati's "Response to Statement of Facts" is Misleading and Inaccurate

Luminati included in its Reply a "Response to Statement of Facts" that advances Luminati's incorrect version of the facts that have already been discussed at length in Teso's MTS Opp. and above. Luminati continues to assert that "[t]here is no obviousness chart" or that Dr. Freedman did not identify "any specific combination" (Reply at 1-2), even though Teso showed that Dr. Freedman provided extensive obviousness analysis in his claim charts, including combinations of specific prior art references. MTS Opp. at 6-9, 10-13. Luminati also continues to assert that the paragraphs that it quoted in the MSJ constituted "the entire discussion of obviousness" as to at least one reference (Reply at 2), even though Luminati clearly omitted significant discussion not only from the body of Dr. Freedman's Report but also from his claim charts. MSJ Opp. at 2; MTS Opp. at 2-9.

Luminati's continued insistence that Teso "never present[s] a single instance of showing how an anticipation reference lacks a limitation or how another reference would be used to modified [sic] the primary reference" (Reply at 2) is wrong as shown above in Section A and at pages 6-13 of Teso's MTS Opp.

* * * * *

For these reasons and the reasons stated in its Opposition, Teso respectfully requests that the Court deny Luminati's Motion.

Dated: December 9, 2019

Respectfully submitted,

MICHAEL C. SMITH
   Texas State Bar No. 18650410
   michaelsmith@siebman.com
**SIEBMAN, FORREST,**
**BURG & SMITH LLP**
113 East Austin Street
Marshall, Texas 75671
Telephone: (903) 938-8900
Telecopier: (972) 767-4620

STEVEN CALLAHAN
   Texas State Bar No. 24053122
   scallahan@ccrglaw.com
CRAIG TOLLIVER
   Texas State Bar No. 24028049
   ctolliver@ccrglaw.com
C. LUKE NELSON
   Texas State Bar No. 24051107
   lnelson@ccrglaw.com
GEORGE T. "JORDE" SCOTT
   Texas State Bar No. 24061276
   jscott@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Defendants UAB Teso LT*
*and UAB Metacluster LT*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on December 9, 2019. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

STEVEN CALLAHAN